[No. 43675.  En Banc.  March 25, 1976.]

FRED K. HASLUND, JR., ET AL, *Respondents*, v. THE CITY OF
SEATTLE, *Appellant*.

*John P. Harris, Corporation Counsel*, and *J. Roger Nowell* and *Jorgen G. Bader, Assistants*, for appellant.

*Lycette, Diamond & Sylvester*, by *Josef Diamond, Robert E. Ratcliffe, John T. Petrie*, and *Lyle L. Iversen*, for respondents.

UTTER, J.—A jury verdict of $2,896,534 was entered in favor of plaintiffs, Roanoke Reef Associates and the individuals comprising the association, against the defendant, the City of Seattle, for damages alleged to have resulted from issuance of an invalid building permit by the City. Appellant City contends the trial court committed error in six respects: failure to properly instruct the jury on theories of liability; failure to recognize governmental immunity; failure to bar the plaintiffs' claim by application of the statute of limitations; failure to find the City's employee acted ultra vires; failure to find plaintiffs were collaterally estopped in bringing this suit, and failure to find respondents did not timely file their claim against the City. We find no error and affirm the verdict.

After purchasing a parcel of lakefront property in 1967, respondents filed an application for a building permit with appellant's building department. No permit was issued at this time inasmuch as complete plans, required by the city building code, did not accompany the application. Subsequently, respondents obtained from the State of Washington a 30-year lease of submerged land adjacent to the property which, under then existing bulk and density requirements, would allow construction of 112 residential units at the site. In 1969, respondents' original application for a building permit was refiled. Respondents' agents submitted

final plans and requested a building permit. At this time the proposed project met existing zoning requirements and no variance was required.

On May 8, 1969, appellant issued a permit "subject to structural and ordinance check." Under established city procedures, this conditional permit did not allow respondents to commence actual construction at this time. Respondents subsequently applied for a street use permit to build an access ramp to their proposed building. Such access was required before appellant could approve the plans and allow construction to commence. Appellant's board of public works denied the street use permit. In May 1970, respondents brought an action against appellant seeking a writ of mandamus compelling the issuance of a street use permit "and directing Defendant City of Seattle to permit [respondents] to commence construction under the building permit issued by the City on May 8, 1969." The Superior Court found the respondents' building permit application complied with the building and zoning codes and that the permit had been issued on May 8, 1969. The court entered a judgment on June 11, 1970, directing appellant to issue a street use permit and "to issue and deliver to [respondents] a building permit for construction of an apartment building . . ." This judgment was not appealed.

In accordance with the writ of mandamus, appellant in October 1970 approved respondents' building plans, removed the condition on the permit and issued the card necessary for respondents to commence construction. Actual construction commenced in March 1971. The following month respondents' building permit was renewed for a second time pursuant to a city ordinance providing that a renewal may be obtained if work is started and is progressing to the satisfaction of the superintendent of buildings.

In September 1971, the Eastlake Community Council sued to enjoin construction of the building, naming both respondents and appellant as codefendants. In December 1971, respondents' mortgage lender withdrew its commitment to make advancements on a construction loan pending

resolution of the Eastlake Community Council suit. Respondents continued with construction of the building. On July 19, 1973, this court held, *inter alia*, that the building permit issued on May 8, 1969, was invalid because it had been issued conditionally in violation of the city building code. *Eastlake Community Council v. Roanoke Associates, Inc.*, 82 Wn.2d 475, 513 P.2d 36 (1973). Following that decision, respondents conferred with appellant and were advised that a new building permit was required and that application must be made for variances and a conditional use permit because the zoning ordinances had been amended since the original building permit application. Efforts by respondents to obtain a new building permit were unsuccessful.

Evidence was introduced indicating that respondents attempted to sell the property and find alternate uses, but the site had little suitability for purposes other than an apartment building. In November 1973, respondents filed a claim for damages against appellant and on February 6, 1974, commenced the present action.

I

The central issue presented during the trial of respondents' allegations in this case was the existence of a legal theory supporting the damage claim. In their complaint respondents pleaded that "by reason of the wrongful actions of the defendants in issuing an invalid building permit the plaintiffs have been damaged in the sum of $7,000,000." This cause of action was predicated on two separate legal theories, both presented to the court below in respondents' trial brief, negligence per se and common-law negligence.[1] The case thus presented an issue of first

---

[1] On appeal, respondents also advance interference with prospective economic advantage and negligent violation of the Superior Court mandate of June 11, 1970, as additional bases for tort liability. Although not necessary to the disposition of this matter, we observe that the former theory requires a showing of appellant's intent to interfere, *see King v. Seattle*, 84 Wn.2d 239, 247, 525 P.2d 228 (1974), and no such intent is suggested by the record. Respondents have cited no authority in support of the latter theory. Moreover, it appears the Superior Court

impression in this jurisdiction and, to this date, one infrequently considered by the courts of other states.[2]

---

did not mandate the issuance of a second valid permit, but only the removal of the conditions attached to the permit issued May 8, 1969. Appellant fully complied with this order.

[2]Respondents contend that because appellant issued the building permit in violation of a city ordinance, see *Eastlake Community Council v. Roanoke Associates, Inc.*, 82 Wn.2d 475, 480-86, 513 P.2d 36 (1973), appellant is liable under the doctrine of negligence per se. *See Wells v. Vancouver*, 77 Wn.2d 800, 804, 467 P.2d 292 (1970). It is doubtful, however, that the injury allegedly suffered by respondents is a harm which was intended to be prevented by compliance with the ordinance. The primary purpose of a building permit ordinance is to insure consistency with zoning and other land use regulations, and code provisions governing the design and structure of buildings. *See* 9 E. McQuillin, *Municipal Corporations* § 26.200 (3d ed. rev. 1974). Generally, in considering tort liability for violation of an ordinance, courts are careful not to exceed the purpose which they attribute to the legislature. W. Prosser, *Law of Torts* § 36, at 192 (4th ed. 1971).

The common-law tort of negligence requires the existence of a duty owed to the complaining party. *LaPlante v. State*, 85 Wn.2d 154, 159, 531 P.2d 299 (1975); *Sigurdson v. Seattle*, 48 Wn.2d 155, 158-59, 292 P.2d 214 (1956). In support of the asserted duty on the part of a city to exercise ordinary care in the issuance of building permits, respondents rely on *Wells v. Vancouver, supra*, and *Campbell v. Bellevue*, 85 Wn.2d 1, 530 P.2d 234 (1975). The rationale of *Wells*, however, is inapplicable to the present case since it rested upon the common-law duty owed by a landowner to an invitee. The *Campbell* decision turned upon the application of the immunity rule and did not consider the existence of a municipal duty because no error was assigned to the pertinent trial court instructions in that case.

Our research has disclosed no case in the highest court of any jurisdiction expressly recognizing or refusing to recognize a duty owed by local governments to building permit applicants. This is so because municipal immunity has only very recently been partially abrogated in many jurisdictions. *See, e.g., Hermer v. Dover*, 106 N.H. 534, 215 A.2d 693 (1965); *Superior Uptown, Inc. v. Cleveland*, 39 Ohio St. 2d 36, 313 N.E.2d 820 (1974); *Irvine v. Montgomery County*, 239 Md. 113, 210 A.2d 359 (1965). Similarly, the majority of federal decisions involving government tort liability for negligence in granting permits and licenses have considered permit administration a "discretionary function," under the Federal Tort Claims Act, 28 U.S.C. § 2680(a). *See, e.g., United States v. Morrell*, 331 F.2d 498 (10th Cir. 1964), *cert. denied sub nom. Chournos v. United States*, 379 U.S. 879 (1964) (grazing permits); *Coastwise Packet Co. v. United States*, 398 F.2d 77 (1st Cir. 1968), *cert. denied*, 393 U.S. 937 (1968) (certificate to operate passenger vessel); *Lemmons v. United States*, 496 F.2d 864 (Ct. Cl. 1974) (permit to dredge gravel); *but see Pennsylvania R.R. v. United States*, 124 F.

The trial court submitted to the jury three instructions which discussed liability for issuance of an invalid building permit. Instruction No. 5 stated:

> The plaintiffs have the burden of proving . . .
> . . . That the defendant is liable for any losses or damages which were proximately caused to the plaintiffs by the issuance of the void building permit. The burden of proof is upon the plaintiffs to prove that their losses and damages were proximately caused by the wrongful issuance of a building permit by the defendant City.

No objection was made to this instruction. Instruction No. 8 informed the jury briefly of respondents' allegations, of appellant's denials, and of the decision of this court holding the permit of May 8, 1969, to be invalid and void as issued in violation of the Seattle building code. The court further stated in its instruction No. 8: "If you find that the losses and damages, if any, to the plaintiffs were proximately caused by the issuance by the City of a void permit, your verdict shall be for the plaintiffs." Appellant's objection to this instruction extended only to the language regarding

Supp. 52 (D.N.J. 1954) (permits for unloading explosives). The few reported state court decisions considering the matter either do not rigorously analyze the duty issue or base their recognition of a duty on questionable authority or no authority. See, e.g., Ellis v. City Council, 222 Cal. App. 2d 490, 35 Cal. Rptr. 317 (1963); Sexstone v. Rochester, 32 App. Div. 2d 737, 301 N.Y.S.2d 887 (1969); see also 154 East Park Ave. Corp. v. Long Beach, 76 Misc. 2d 445, 350 N.Y.S.2d 974 (1973) (warranty theory); cf. Belle Harbor Realty Corp. v. Kerr, 43 App. Div. 2d 727, 350 N.Y.S.2d 698 (1973), rev'd, 35 N.Y.2d 507, 364 N.Y.S.2d 160, 323 N.E.2d 697 (1974).

Whether a local government stands in such a relation to a permit applicant that the law will impose upon it an obligation of reasonable conduct for the benefit of the applicant is a question of law and policy. King v. Seattle, 84 Wn.2d 239, 250, 525 P.2d 228 (1974). "The policy questions inherent in the establishment of a duty and in the possible limitation of legal liability must be the primary focus of an appellate court when duty questions are involved." Wells v. Vancouver, supra at 809-10 (Finley, J., concurring); see Raymond v. Paradise Unified School Dist., 218 Cal. App. 2d 1, 8-9, 31 Cal. Rptr. 847 (1963). However, because these matters were not properly presented to the trial court, we do not decide whether or not appellant owed a duty to respondents in the circumstances of this case.

damages and did not question whether it correctly stated the theory of liability:

> Turning now to the Court's proposed instructions, in Instruction No. 8, I believe the last paragraph at least should be modified, and I suggest the following changes to the last paragraph: "If you find that," and insert "all or some of the losses and damages to the plaintiffs were proximately caused by the issuance by the City of a void permit, your verdict shall be for the plaintiffs." And then insert, "in such amounts as you find." I think that without that change the jury is given too great a latitude and is led to believe that the plaintiffs have the right to recover all of their damages, assuming that any of their damages were proximately caused by defendant's acts.

> What I'm trying to suggest here is that the jury could find that the defendants proximately caused some damage to the plaintiff, and then it would be incumbent upon the jury to determine how much. The way that the Court's proposed Instruction No. 8 reads in the last paragraph is highly suggestive that all of the plaintiffs' damages, as claimed, are recoverable if the jury finds proximate causation.

Following appellant's objection, the trial court inserted the words "if any" after the word "damages" and no further objection was made. Instruction No. 9 repeated portions of instructions Nos. 5 and 8, and appellant objected on the sole grounds that it prejudicially emphasized the fact that the building permit had been declared invalid by this court.

■ The appellant offered four instructions pertaining to the theory of liability. In defendant's proposed instructions Nos. 3 and 6, appellant sought to present respondents' claim as one for intentional interference with prospective economic advantage. *See King v. Seattle*, 84 Wn.2d 239, 525 P.2d 228 (1974). Since there was insufficient evidence to support this theory of the case, the proposed instructions were properly refused. *Elmer v. Vanderford*, 74 Wn.2d 546, 552, 445 P.2d 612 (1968); *DeKoning v. Williams*, 47 Wn.2d 139, 141, 286 P.2d 694 (1955). Proposed instruction No. 1 would have informed the jury that appellant denied it acted wrongfully, denied respondents' reliance on the

building permit and denied respondents' damages were proximately caused by appellant's conduct. In its proposed instruction No. 2, appellant sought to charge the jury that if the "City Building Department acted reasonably in issuing the building permit under all of the circumstances in this case, then even though the permit was later disclosed to be invalid you are instructed that the City did not act wrongfully within the meaning of these instructions." The court refused to give the above instructions and in taking exception appellant's counsel stated, "I might say in respect to the defendant's first proposal, I believe the issue of wrongfulness of the issuance of the building permit is a question of fact, which plaintiffs have pleaded wrongfulness, and the jury should be instructed on that issue as defendant's proposed Instructions 1 and 2 would do."

■ We are committed to the rule that, insofar as possible, there shall be one trial on the merits with all issues fully and fairly presented to the trial court at that time so the court may accurately rule on all issues involved and correct errors in time to avoid unnecessary retrials. *See, e.g., Moore v. Mayfair Tavern, Inc.,* 75 Wn.2d 401, 406-07, 451 P.2d 669 (1969) (refusal of proposed instructions); *Holt v. Nelson,* 11 Wn. App. 230, 234, 523 P.2d 211 (1974) (refusal of proposed instructions); *Tomlinson v. Bean,* 26 Wn.2d 354, 361, 173 P.2d 972 (1946) (offer of proof); *Barci v. Intalco Aluminum Corp.,* 11 Wn. App. 342, 346 n.1, 522 P.2d 1159 (1974) (offer of proof); *Presnell v. Safeway Stores, Inc.,* 60 Wn.2d 671, 675, 374 P.2d 939 (1962) (objection to evidence).

CR 51(f) provides that in objecting to the giving of any instruction and to the refusal to give a requested instruction, counsel "shall state distinctly the matter to which he objects and the grounds of his objection . . ." The objection must apprise the trial judge of the points of law involved and where it does not so advise the court on any particular point of law, those points will not be considered on appeal. *Tunney v. Seattle Mental Health Rehabilitation Institute,* 83 Wn.2d 695, 697, 521 P.2d 932 (1974); *State v.*

*Scherer,* 77 Wn.2d 345, 352, 462 P.2d 549 (1969); *Colonial Inv. Co. v. Kuhnhausen,* 73 Wn.2d 861, 863-64, 440 P.2d 975 (1968); *Dravo Corp. v. L.W. Moses Co.,* 6 Wn. App. 74, 82, 492 P.2d 1058 (1971). "Thus the burden is placed upon counsel to use his best efforts to keep [the] trial free from error." *State v. McDonald,* 74 Wn.2d 141, 145, 443 P.2d 651 (1968). As was noted in *Dravo Corp. v. L.W. Moses Co., supra* at 83, "[t]he purpose of the rule is to make clear to the court, at a time when it has all the evidence and legal arguments before it, the exact points of law and reasons upon which counsel argues the court is committing error, as relates to a particular instruction." *See State v. McDonald, supra* at 145.

█ When appellant failed to argue in objection to instruction No. 8 that, given a finding of proximate cause, the charge to the jury amounted to a directed verdict on the question of liability, it missed an opportunity to obtain an instruction expressly embodying its theory of the case. Appellant objected only to that part of the court's instruction regarding damages and did not refer to any aspect of the liability question. The objection did not specify the court's failure to instruct on the established elements of the underlying tort theories. Appellant's claim of error with respect to court's instruction No. 9 was inadequately preserved for the same reasons. In addition, although it was repetitive of the preceding instruction, instruction No. 9 did not so repetitiously cover the points of law as to generate an extreme emphasis in favor of one party. *See Samuelson v. Freeman,* 75 Wn.2d 894, 897, 454 P.2d 406 (1969); *Hinkel v. Weyerhaeuser Co.,* 6 Wn. App. 548, 553, 494 P.2d 1008 (1972).

Similarly, appellant's claim of error with respect to its proposed instructions Nos. 1 and 2 was not adequately preserved by the objection made during trial. Although not at all clear from proposed instruction No. 2 and the objection, the thrust of appellant's position appears to be that the exercise of ordinary care by appellant would preclude imposition of liability. This lack of clarity itself prevented the trial court from appreciating the nature of appellant's argu-

ment. More importantly, counsel failed to apprise the court of the points of law on which the proposed instruction was based. The court should have been informed that respondents' alternative claim for relief was, as stated in their trial brief, a common-law negligence cause of action, thus requiring the jury to pass on the factual question of whether appellant breached its duty to exercise ordinary care, if any. *See, e.g., LaPlante v. State*, 85 Wn.2d 154, 159, 531 P.2d 299 (1975); *Wells v. Vancouver*, 77 Wn.2d 800, 803, 467 P.2d 292 (1970); *Sigurdson v. Seattle*, 48 Wn.2d 155, 158-59, 292 P.2d 214 (1956); W. Prosser, *Law of Torts* §§ 30-33, 37 (4th ed. 1971).

■ The need for instructions accurately setting forth the legal basis for liability was essential to the proper trial of this case. The trial court, in our view, should have had the benefit of vigorous and detailed objections to the instructions given and to the refusal to give instructions on the several theories of liability argued in this court, giving it an opportunity to correct the error, if any. It cannot be presumed that because the court once refused instructions suggesting appellant's view of the basis for liability, further argument, bolstered by reference to specific points of law, with respect to instructions Nos. 8 and 9 would not have prevailed. Although counsel for respondents has not urged that appellant failed to preserve its claim of error regarding the above instructions, we conclude, from an examination of the record, that appellant's inadequate objections deprived the trial court of an opportunity to be thoroughly apprised of its alleged error on the novel issue central to this case. In previous decisions this court has reviewed the trial court decision on grounds not raised by the parties on appeal. *See Siegler v. Kuhlman*, 81 Wn.2d 448, 502 P.2d 1181 (1972); *Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 621-32, 465 P.2d 657 (1970); RAP 12.1(b) (adopted January 28, 1976; effective July 1, 1976); *cf. Northwest Collectors, Inc. v. Enders*, 74 Wn.2d 585, 595, 446 P.2d 200 (1968); *State v. Berkins*, 2 Wn. App. 910, 916, 471 P.2d 131 (1970);

*Grange Ins. Ass'n v. Eschback*, 1 Wn. App. 230, 236, 460 P.2d 690 (1969).

■ Appellant also contends the trial court erred in giving and failing to give several additional instructions. Appellant's proposed instruction No. 22 would have charged the jury that if they found the building permit was issued conditionally at the request of respondents, a verdict should be returned for the appellant. With the possible exception of the defenses of contributory and comparative negligence, there is no legal basis for the requested instruction. To the extent this instruction was intended to raise the above affirmative defenses, the instruction was properly refused because the defenses had not been pleaded by appellant. *See* CR 8(c). The trial court's rulings with respect to other proposed instructions did not constitute prejudicial error inasmuch as the instructions were incorrect statements of the law, for reasons discussed elsewhere in this opinion, because they contained issues not presented by the pleadings or evidence, or because they raised issues adequately covered by the court's instructions from which appellant could argue its position.

## II

■ Appellant argues that respondents' claim is barred by the doctrine of governmental immunity. RCW 4.96.010 provides that "[a]ll . . . municipal corporations . . . shall be liable for damages arising out of their tortious conduct . . . to the same extent as if they were a private person or corporation . . . ." Since the purpose of this provision was to extend the abrogation of the state's immunity by RCW 4.92.090 to other governmental entities, *see* Laws of 1967, ch. 164, § 17, p. 805, principles governing state immunity are applicable here as well. Agents and officials of local government are not liable for all official misconduct under the terms of the statute.

> "Liability cannot be imposed when condemnation of the acts or omissions relied upon *necessarily* brings into question the propriety of governmental objectives or programs or the decision of one who, with the authority to

do so, determined that the acts or omissions involved should occur or that the risk which eventuated should be encountered for the advancement of governmental objectives."

*Evangelical United Brethren Church v. State*, 67 Wn.2d 246, 254, 407 P.2d 440 (1965). In that case this court noted, at page 255, four preliminary questions which assist in distinguishing between truly discretionary acts and other administrative processes:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy . . . as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act . . . require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite . . . authority . . .? If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom. If, however, one or more of the questions call for or suggest a negative answer, then further inquiry may well become necessary, depending upon the facts and circumstances involved.

This test was further refined in *King v. Seattle*, 84 Wn.2d 239, 246, 525 P.2d 228 (1974), where we emphasized:

Immunity for "discretionary" activities serves no purpose except to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government. Accordingly, to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in "discretionary activity" is irrelevant if, in a given case, the employee did not render a considered decision.

*See* Peck, *Laird v. Nelms: A Call for Review and Revision of the Federal Tort Claims Act*, 48 Wash. L. Rev. 391,

415-18 (1973). Thus, discretionary governmental immunity is, in this state, an extremely limited exception. *Mason v. Bitton*, 85 Wn.2d 321, 328, 534 P.2d 1360 (1975). *See Campbell v. Bellevue*, 85 Wn.2d 1, 9-13, 530 P.2d 234 (1975).

Appellant's issuance of a building permit meets none of the criteria for the discretionary function exception. In this particular case, questions of policy and discretion were settled at the time the ordinances composing the code were adopted. *Eastlake Community Council v. Roanoke Associates, Inc.*, 82 Wn.2d 475, 482, 513 P.2d 36 (1973). No showing has been made that a "policy decision, consciously balancing risks and advantages, took place" in the issuance of the building permit to respondents. *King v. Seattle*, *supra* at 246. There is, therefore, no governmental immunity for appellant in this case.

### III

As an affirmative defense to this action, appellant pleaded the statute of limitations. *See* RCW 4.16.080, 4.16.130. In a number of cases raising this defense, and here, as well, its validity depends on the determination of when respondents' cause of action accrued. *See* RCW 4.16.010; *Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 219, 543 P.2d 338 (1975). Relying on the general rule that a cause of action accrues and the statute of limitations begins to run when a party has the right to apply to a court for relief (*Gazija v. Nicholas Jerns Co.*, *supra* at 219; *Washington Security Co. v. State*, 9 Wn.2d 197, 202-03, 114 P.2d 965, 135 A.L.R. 1330 (1941)), appellant contends respondents' cause of action accrued at the time of the issuance of the invalid building permit, May 8, 1969.

In general terms, the right to apply to a court for relief requires each element of the action be susceptible of proof. In *Gazija*, we recognized that an essential element of a cause of action based upon negligence or "wrongful" acts, as alleged in respondents' complaint, is actual loss or damage.

The mere danger of future harm, unaccompanied by present damage, will not support a negligence action.

. . . Until a plaintiff suffers appreciable harm as a consequence of negligence, he cannot establish a cause of action. Thus, although a right to recover nominal damages will not commence the period of limitation, the infliction of actual and appreciable damage will trigger the running of the statute of limitations. *Davies v. Krasna*, 14 Cal. 3d 502, 535 P.2d 1161, 121 Cal. Rptr. 705 (1975).

*Gazija v. Nicholas Jerns Co., supra* at 219.

Implicit in this discussion was our recognition that accrual of an action should not depend upon a technical breach of duty which determines whether plaintiff has a right to seek judicial relief, but upon the existence of a practical remedy. Statutes of limitation are seldom amended and thus the "delicate process of adjustment is left to rationalization and interpretation by the courts." *Developments in the Law—Statutes of Limitations*, 63 Harv. L. Rev. 1177, 1185 (1950). This adjustment turns on the practical purposes served by a statute of limitation in our legal system, including protection of the defendant's reasonable expectation that at some point the slate has been wiped clean of ancient obligations and that he ought not to be called to resist a claim when "evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 349, 88 L. Ed. 788, 64 S. Ct. 582 (1944). The practical needs of plaintiffs have been responsible for the recent adjustments delaying accrual until discovery of the harm in certain circumstances. *See Gazija v. Nicholas Jerns Co., supra; Ruth v. Dight*, 75 Wn.2d 660, 453 P.2d 631 (1969); *Janisch v. Mullins*, 1 Wn. App. 393, 461 P.2d 895 (1969). The effectiveness of courts and a desire to relieve them of the burden of adjudicating inconsequential or tenuous claims have been cited as other factors in the process of adjustment. *Developments in the Law—Statutes of Limitations, supra* at 1185.

The determination of the time at which a plaintiff suffered actual and appreciable damage is a question of fact. Since the statute of limitations is an affirmative defense, CR 8(c), the burden was on appellant to prove those facts

which established the defense. *See Olpinski v. Clement*, 73 Wn.2d 944, 949-50, 442 P.2d 260 (1968). Appellant, however, did not request an instruction presenting to the jury the factual issue of the time respondents first sustained damage. " 'If a party desires to have the instructions adapted to a particular view of the case or to meet a situation which he conceives ought to be covered, it is his duty to specially request them . . .' " *Peterson v. Seattle*, 51 Wn.2d 187, 191, 316 P.2d 904 (1957) *quoting Hiscock v. Phinney*, 81 Wash. 117, 142 P. 461 (1914); *accord, Provins v. Bevis*, 70 Wn.2d 131, 139, 422 P.2d 505 (1967); *Simpson Timber Co. v. Ljutic Indus., Inc.*, 1 Wn. App. 631, 635, 463 P.2d 243 (1969); *see Elmer v. Vanderford*, 74 Wn.2d 546, 552, 445 P.2d 612 (1968). Appellant's failure to request an appropriate instruction on the factual aspects of the statute of limitations issue deprived appellant of an opportunity to substantiate its contention that the limitations period began to run from the date of the permit's issuance or, alternatively, from the filing of the complaint of the Eastlake Community Council on September 20, 1971.

In some circumstances, of course, a court may be able to conclude as a matter of law that no triable issue of fact exists as to when plaintiff suffered actual and appreciable damage giving rise to a practical legal remedy. *Budd v. Nixen*, 6 Cal. 3d 195, 202, 491 P.2d 433, 98 Cal. Rptr. 849 (1971). From the evidence presented, we are unable to reach such a conclusion with respect to events occurring prior to July 11, 1973. On that date, this court declared invalid the permit under which respondents were actively proceeding to build their structure, thus preventing any further construction. *Eastlake Community Council v. Roanoke Associates, Inc., supra.* Therefore, we conclude as a matter of law that respondents suffered actual and appreciable harm as of July 11, 1973. Since respondents filed their complaint in the present action on February 6, 1974, thus tolling the limitations period under RCW 4.16.170 well within either the 2- or 3-year period, their action is not barred by any statute of limitations.

IV

■ Appellant argues its issuance of the building permit in violation of the city building code was an ultra vires act for which it may not be held liable. *See* 18 E. McQuillin, *Municipal Corporations* § 53.60 (3d ed. rev. Supp. 1975). An ultra vires act is one performed without any authority to act on the subject. *Woodward v. Seattle*, 140 Wash. 83, 87, 248 P. 73 (1926). Here there is no plausible claim that the City did not have authority, through its building department, to issue building permits. *Wendel v. Spokane County*, 27 Wash. 121, 124, 67 P. 576 (1902), distinguished between those acts which are absolutely ultra vires because the subject matter is wholly beyond the scope of the municipal corporation's powers and those acts which might be considered in some sense ultra vires, as where the government entity has jurisdiction of the subject matter but in the execution of this authority acts in violation of a statute or the rights of others. The court held that "[i]n the first instance it is conceded by all authority that the corporation is not liable, and in the second, by almost universal modern authority, that it is; . . ." *Wendel v. Spokane County, supra* at 124; *accord,* 18 E. McQuillin, *Municipal Corporations* § 53.60, at 285, § 53.61; *Fordney v. King County*, 9 Wn.2d 546, 554-56, 115 P.2d 667 (1941). Appellant failed to establish that its employees had no authority to act on the subject matter giving rise to this suit and, hence, the defense of ultra vires action is unavailable to it.

V

Appellant further contends that respondents are collaterally estopped from pursuing the present suit for damages by the judgment of the Superior Court entered June 11, 1970. In the earlier action, respondents sought a writ of mandate to require appellant to issue a street use permit and to direct appellant to allow respondents to "commence construction under the building permit issued by the City on May 8, 1969." The Superior Court judgment was not appealed.

■ The doctrine of collateral estoppel precludes parties

from relitigating an issue which has been actually and necessarily contested and determined in a prior action between the same parties. *King v. Seattle*, 84 Wn.2d 239, 525 P.2d 228 (1974), at 243. Although involving the same parties, respondents' mandamus action did not actually or necessarily determine any of the issues presented in this case since the prior action considered only the propriety of respondents' permit application and the duty of appellant under its building code to allow construction to commence. Therefore, respondents were not collaterally estopped from litigating the tort liability of appellant for issuance of an invalid building permit.

## VI

Finally, appellant argues that respondents failed to file a claim for damages within 120 days from the date injury was sustained as required by RCW 35.31.020. However, we recently declared this and other nonclaim statutes unconstitutional as arbitrary burdens imposed on persons with claims against the government. *Hunter v. North Mason High School & School Dist. 403*, 85 Wn.2d 810, 813 n.2, 819-20, 539 P.2d 845 (1975). Thus, the time at which respondents filed their damage claim is of no consequence.

Judgment affirmed.[3]

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, BRACHTENBACH, and HOROWITZ, JJ., concur.

Petition for rehearing denied July 1, 1976.

---

[3]This opinion was filed subsequent to the death of Justice Robert C. Finley who participated in the hearing and decision of this appeal.