[No. 65919-7-I.   Division One.   October 31, 2011.]

JOHN MURPHEY ET AL., *Appellants*, v. CHARLES D. GRASS, CPA & ASSOCIATES, PS, *Respondent*.

*Mark D. Kimball* and *James P. Ware* (of *MDK Law Associates*), for appellants.

*Christopher W. Tompkins* and *Lori Worthington Hurl* (of *Betts Patterson & Mines PS*), for respondent.

¶1 ELLINGTON, J. — For purposes of the statute of limitations, a claim alleging negligent preparation of state tax

returns accrues when the taxpayer incurs actual and appreciable injury, that is, when the Washington State Department of Revenue (Department) has issued its final assessment and can proceed to collect it. By statute, the assessment is not final until the conclusion of any internal Department review. Thus, the claim here did not accrue until the Department's appeals division made its final determination, whereupon the assessment became final, binding, and due for payment. We reverse and remand for further proceedings.

## BACKGROUND

¶2 John Murphey is a principal in two businesses involved in construction, John Murphey Construction and Murphey and Westcott, d/b/a J&L Enterprises. In 1997, Murphey retained Charles D. Grass, CPA & Associates (Grass) to prepare payroll and tax returns. As Murphey's business grew, so did Grass's responsibilities. By 2000, Grass managed all bookkeeping and accounting services for both businesses.

¶3 In 2004, the Department initiated random audits of John Murphey Construction and J&L Enterprises. The auditor focused particularly on payment of tax on goods purchased. The Department requested documents to substantiate that Murphey paid sales tax rather than use tax at the time of purchase. Grass was unable to produce the documentation.

¶4 Murphey then discovered that the Internal Revenue Service (IRS) had issued tax liens for unpaid employment taxes. Confronted about the liens, the Grass accountant initially lied about the matter, assuring Murphey that it was a mistake. It developed that the accountant had also failed to open or to notify Murphey about a number of IRS notices regarding the unpaid taxes. Murphey eventually learned the liens were accurate and that he owed approximately $100,000 in employment taxes, interest, and penalties.

¶5 Murphey fired Grass and requested the return of all records. His attorney warned Grass that the "penalties which the [IRS] has imposed [are] a result of the errors, omissions and deceitful actions of your agents. Once Mr. Murphey has assessed all his damages, he will then make demand upon you for the damages and return of fees."[1] Murphey's counsel suggested Grass "contact your errors and omissions insurance carrier at once to inform them of this likely claim."[2]

¶6 State auditors finished the John Murphey Construction audit in February 2006, determining that Murphey had underpaid retailing, sales, and use tax. In March 2006, the Department issued a tax assessment indicating a "total due and assessed" amount of $70,340.00, including $24,423.00 in penalties and interest.[3] The assessment stated payment was due April 10, 2006. Thereafter, the Department twice revised the assessment after Murphey located and submitted additional paperwork. The second postassessment adjustment was dated October 2, 2006. The final assessment was for $64,615.00 including penalties, plus $3,280.86 in extension interest.[4]

¶7 Murphey timely petitioned for correction of the Department's assessments and penalties under RCW 82.32-.160 and WAC 458-20-100 in early 2006.

¶8 In June 2006, the Department finished the J&L Enterprises audit, finding that adequate records had not been maintained and that taxes had been underpaid. The Department eventually issued an assessment for $114,417.00, in-

---

[1] Clerk's Papers at 48.

[2] *Id.*

[3] Clerk's Papers at 141.

[4] Clerk's Papers at 127. Though neither of the postassessment adjustment documents in the record include the three schedules detailing the changes or setting out the new amount due, this revised figure appears in the appeals division final determination of the amount owed.

cluding a penalty of $4,514.00.[5] Again, Murphey timely petitioned for correction.

¶9 In his petitions for correction, Murphey argued the assessments and penalties should be waived "based on the misconduct and negligence of the accountant."[6] Murphey contended the misconduct constituted matters beyond his control warranting relief under RCW 82.32.105, which permits the Department to waive penalties resulting from circumstances outside the taxpayer's control.[7]

¶10 On February 13, 2009, the appeals division of the Department issued determinations denying Murphey's petitions for correction because he failed to demonstrate that "even rudimentary safeguards or controls were in place," and thus had not established that the accountant's misconduct was beyond his control.[8] Accordingly, the assessments of $114,417.00 and $64,615, plus extension interest, became "due for payment."[9] Murphey then appealed to the board of tax appeals.

¶11 While the appeal was pending, Murphey filed suit against Grass in November 2009, alleging breach of contract and breach of fiduciary duty in failing to file proper state and federal tax returns and failure to maintain

---

[5] Presumably the J&L Enterprises audit culminated in a tax assessment document similar to the one issued for Murphey Construction, but it does not appear in the record. Accordingly, the date of the assessment is unknown.

[6] Clerk's Papers at 117.

[7] The Department may waive penalties if "the failure of a taxpayer to pay any tax by the due date was the result of circumstances beyond the control of the taxpayer." RCW 82.32.105(1). "Circumstances beyond the control of the taxpayer are generally those which are immediate, unexpected, or in the nature of an emergency. Such circumstances result in the taxpayer not having reasonable time or opportunity to obtain an extension of the due date or otherwise timely file and pay." WAC 458-20-228(9)(a)(ii). This may include fraud, embezzlement, or theft by an employee or agent, but only if the taxpayer could not immediately detect or prevent the act and reasonable safeguards or internal controls were in place. WAC 458-20-228(9)(a)(ii)(F).

[8] Clerk's Papers at 120.

[9] Clerk's Papers at 121. Some extension interest was waived "[b]ecause the delay in the issuance of this [d]etermination was solely for the convenience of the Department." Clerk's Papers at 138.

adequate records in compliance with state law.[10] Grass moved for summary judgment of dismissal, contending the three-year statute of limitations began to run in 2005 and 2006, when Murphey learned of Grass's mismanagement. The court granted the motion. Murphey appeals. We apply the usual standard for review.[11]

## DISCUSSION

¶12 The question here is when Murphey suffered actual and appreciable damage, causing his claim to accrue. The statute of limitations for his claims is three years, and begins to run when all elements necessary to the claim exist and the plaintiff has a right to seek relief in the courts.[12]

¶13 Injury is a necessary element in a professional negligence case.[13] An accounting malpractice claim does not accrue until the client discovers or in the exercise of reasonable diligence should have discovered an injury,[14]

---

[10] Murphey later conceded his claims for failure to file proper federal tax returns were barred by the three-year statute of limitations. It does not appear that the complaint was ever so amended, but those claims were not pursued.

[11] This court reviews summary judgment de novo. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). Summary judgment is affirmed when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.* (quoting CR 56(c)). All facts and reasonable inferences are considered in the light most favorable to the nonmoving party, and summary judgment is appropriate only if, from all the evidence, reasonable persons could reach but one conclusion. *Id.* (citing *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)). The moving party must show that there is no genuine issue as to any material fact. If this burden is met, the nonmoving party must present evidence demonstrating that material facts are in dispute. *Id.* (quoting *Atherton*, 115 Wn.2d at 516). Summary judgment is proper if the nonmoving party fails to do so. *Id.* (quoting *Atherton*, 115 Wn.2d at 516).

[12] RCW 4.16.080(3); *Sabey v. Howard Johnson & Co.*, 101 Wn. App. 575, 592-93, 5 P.3d 730 (2000).

[13] *Hunter v. Knight, Vale & Gregory*, 18 Wn. App. 640, 643, 571 P.2d 212 (1977).

[14] *Id.*

which must be "actual and appreciable damage,"[15] not speculative or merely potential liability.[16]

¶14 Although Grass contends Murphey's damage was apparent even earlier,[17] the parties essentially agree that Murphey's claims accrued at latest when the Department issued its "final assessments."[18] They disagree, however, about when that occurred. Usually the determination of when a party suffered actual and appreciable injury is a question of fact.[19] In some cases, however, a court may be able to conclude as a matter of law that no triable issue of fact exists as to when the injury occurred.[20] This is such a case.

¶15 The Department sent Murphey a tax assessment for Murphey Construction in March 2006. Grass contends this and the subsequent assessment for J&L Enterprises constituted final assessments and triggered the limitations period.

¶16 The language in the document tends to support Grass's position. It advises, "This is your Tax Assessment," states the total amount due including interest and penalty, provides a date by which payment must be made, and warns that additional penalties and interest will be assessed if the payment is not timely.[21] Grass argues Murphey was injured when he received the initial tax assessment.

---

[15] *Haslund v. City of Seattle*, 86 Wn.2d 607, 620, 547 P.2d 1221 (1976) (quoting *Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 219, 543 P.2d 338 (1975)).

[16] *Sabey*, 101 Wn. App. at 595.

[17] Grass argues Murphey sustained injury as early as mid-2005, when he became aware of the IRS tax liens, or by December 2005 when Murphey fired Grass because of negligence or misconduct resulting in IRS penalties.

[18] *See* Br. of Appellant at 13-14; Br. of Resp't at 8 n.4, 16; Reply Br. of Appellant at 3-4.

[19] *Haslund*, 86 Wn.2d at 620.

[20] *Id.* at 621.

[21] Clerk's Papers at 141.

¶17 But the statute, not the document, controls the analysis. An assessment "becomes final" at that stage only if the taxpayer elects not to file a timely petition for correction of the assessment:

> *Any person* having been issued a notice of additional taxes, delinquent taxes, interest, or penalties assessed by the department, *may within thirty days* after the issuance of the original notice of the amount thereof or within the period covered by any extension of the due date thereof granted by the department *petition the department in writing for a correction* of the amount of the assessment, and a conference for examination and review of the assessment. . . . *If no such petition is filed within the thirty-day period the assessment covered by the notice shall become final.*[22]

Murphey timely filed petitions for correction. He contends the assessments did not become final and he incurred no injury until the administrative appeal process concluded.

¶18 This view is consistent with WAC 458-20-100(5)(d), which provides, "The determination of the [administrative law judge on the petition for correction] is the final decision of the department and is binding upon the taxpayer unless a petition for reconsideration is timely filed by the taxpayer and accepted by the department." Further, a taxpayer may appeal to the board of tax appeals only from "a denial of a petition for correction of an assessment."[23] Thus, the initial assessment notice is not "final" in the sense of being automatically appealable. Also validating Murphey's view is the fact that the Department revised the assessment for Murphey Construction twice before the appeals division concluded the administrative process.

¶19 Decisions from several jurisdictions support Murphey's analysis. Illustrative is *International Engine Parts,*

---

[22] RCW 82.32.160 (emphasis added).

[23] WAC 458-20-100(8). A taxpayer who pays the disputed tax may petition in superior court for a refund, however, without first seeking Department review. WAC 458-20-100(9).

*Inc. v. Feddersen & Co.*, in which the California court held that a claim for negligent preparation of tax returns does not accrue until the IRS makes a "final determination" of a tax deficiency.[24] The court described the IRS audit procedure, which, as in Washington state audits, begins with an auditor's examination. The taxpayer is sent a report of the auditor's findings along with any "proposed deficiency assessments."[25] If the taxpayer agrees, he or she must sign forms acknowledging liability and waiving certain rights, including the ability to litigate the proposed deficiency in tax court.[26] If the taxpayer disagrees, the findings are reviewed by the district office and the taxpayer is notified that he or she has 30 days to file a protest.[27] If the taxpayer files a protest, there is a conference with the appeals office, which thereafter issues a final determination on the issue.[28] The taxpayer then has 90 days to file a petition in tax court before collections actions begin.[29]

¶20 The *Feddersen* court recognized a "special bright-line rule for accounting malpractice for the negligent preparation of tax returns that are subsequently audited by taxing authorities,"[30] holding that a claim accrues on the date the IRS makes a final determination of tax deficiency, not the date of the auditor's proposed assessment. "The deficiency assessment serves as a *finalization* of the audit process and the commencement of actual injury because it is the trigger that allows the IRS to collect amounts due and

---

[24] 9 Cal. 4th 606, 888 P.2d 1279, 38 Cal. Rptr. 2d 150 (1995).

[25] *Id.* at 612.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Sahadi v. Scheaffer*, 155 Cal. App. 4th 704, 717, 66 Cal. Rptr. 3d 517 (2007).

the point at which the accountant's alleged negligence has caused harm to the taxpayer."[31]

¶21 Another California court commented that "[m]ost courts, and particularly those that apply the discovery rule in determining when a cause of action accrues, have adopted the date of formal tax assessment as the accrual date in cases similar to this."[32] Although some courts have taken different approaches,[33] the weight of authority is with *Feddersen*.

¶22 The Washington procedure is indistinguishable from that addressed in *Feddersen*. When a taxpayer petitions for correction of an assessment, the appeals division final determination triggers the Department's ability to collect. Under *Feddersen*'s analysis, only at this point does the taxpayer sustain harm and the claim accrue.

¶23 Grass resists the *Feddersen* analysis by relying on *Huff v. Roach*[34] and *Janicki Logging & Construction Co. v.*

---

[31] *Feddersen*, 9 Cal. 4th at 617.

[32] *CDT, Inc. v. Addison, Roberts & Ludwig, CPA, PC*, 198 Ariz. 173, 179, 7 P.3d 979 (2000); *see also Sahadi*, 155 Cal. App. 4th at 719 (collecting cases from Alaska, Arizona, Idaho, Maryland, North Carolina, New Mexico, Ohio, Oklahoma, Texas and Utah).

[33] In Massachusetts, the commencement of the statute of limitations in negligent tax preparation cases is a fact-specific question that must be presented the jury. *Kennedy v. Goffstein*, 62 Mass. App. Ct. 230, 235, 815 N.E.2d 646 (2004) ("there are just too many different possible fact scenarios in the complicated, cumbersome, maze-like world of taxes and accountants, to establish a bright-line, one-size-fits-all rule"). Florida has established a rule that the limitations period does not begin until the tax court decides the issue. *Peat, Marwick, Mitchell & Co. v. Lane*, 565 So. 2d 1323, 1326 (Fla. 1990) (rejecting rule that action accrues with deficiency determination because "[s]uch a course would have placed [plaintiffs] in the wholly untenable position of having to take directly contrary positions in these two actions. In the tax court, the [taxpayers] would be asserting that the deduction [the accountant] advised them to take was proper, while they would simultaneously argue in a circuit court malpractice action that the deduction was unlawful and that [the accountant's] advice was malpractice."). Additionally, at least one court has held that injury from negligent tax preparation occurs on the deadline for filing the tax return. *Goulding v. Solomon*, 123 Misc. 2d 954, 956, 475 N.Y.S.2d 723 (1984). And in Indiana, the rule seems to be that injury occurs at the earlier of when the client paid the accountant or filed the negligently prepared return. *Davis v. Geo. S. Olive & Co.*, 731 F. Supp. 1380, 1386 (S.D. Ind. 1990).

[34] 125 Wn. App. 724, 106 P.3d 268 (2005).

*Schwabe, Williamson & Wyatt, PC,*[35] two cases in which plaintiffs sued their former attorneys for malpractice after discovering the attorneys had missed the statute of limitations. In *Huff,* the clients waited to file an action until a court dismissed the time-barred suit seven years later.[36] The trial court dismissed the claim against the attorney, and Division Three of this court affirmed, rejecting the argument that the claim did not accrue until the underlying case was dismissed and they suffered actual damages.[37]

¶24  In *Janicki,* the clients waited until dismissal of their claim was affirmed on appeal, and then sued their attorney for missing the statute of limitations.[38] The trial court dismissed the action and we affirmed, rejecting the argument that the claim against counsel did not accrue until they had exhausted their appeals.[39]

¶25  Grass's reliance on these cases is misplaced. *Huff* and *Janicki* are not inconsistent with *Feddersen* and, in any event, presented different issues. In all three cases, the claims accrued when the plaintiffs learned of injury that was certain. In *Huff* and *Janicki,* the attorneys' failure to bring an action within the statute of limitations caused certain injury, barring the clients' claims as a matter of law. In *Feddersen,* the injury was certain and the claim accrued when the taxing agency issued its final determination and could collect.

¶26  Murphey's liability was not certain until the appeals division made the assessments final, binding, and due for payment. "[P]otential liability is not the equivalent of

---

[35] 109 Wn. App. 655, 37 P.3d 309 (2001).

[36] 125 Wn. App. at 728.

[37] *Id.* at 731-32.

[38] 109 Wn. App. at 658-59.

[39] *Id.* at 660-61. The court nevertheless reversed after adopting the continuous representation rule, which is not relevant here. *Id.* at 663-64.

actual harm."[40] Thus, the limitations period did not commence before the appeals division final determinations.

¶27 Grass strenuously argues that Murphey was not entitled to await the results of the "Tax Appeals Court" before filing his claim.[41] This is correct but irrelevant. There was no "Tax Appeals Court." The appeals division of the Department was the final administrative decision-maker. It is not a court.

¶28 Grass argues that because all Murphey's damage, including both federal and state tax liability, arose from Grass's alleged negligence, and since Murphey acknowledges the statute of limitations has run on federal tax matters, the same must be true as to all other claims. We disagree.

¶29 There is no doubt that Murphey had notice of Grass's negligence as early as 2005 when he learned of the IRS tax liens, or 2006 when the state auditor finished his reports. But Murphey's claims did not accrue until actual injury flowed from this negligence. Grass analogizes to medical malpractice cases and contends that all Murphey's claims accrued at the first sign of injury, and the fact that other or more severe injuries manifested later does not reset the limitations period.

¶30 The analogy is unpersuasive. Murphey's claims are not based on multiple injuries arising from the same act. Rather, the claims are based upon separate acts: failure to comply with the federal tax code in filing federal employment taxes and failure to comply with the state tax code in filing state tax returns. The duties, while similar, are entirely independent, and Grass's negligent performance in one area would not necessarily put Murphey on notice of negligence in the other. Further, *Feddersen* teaches that the limitations period for negligent preparation of federal tax returns may begin at different times, depending on whether

---

[40] *Sabey*, 101 Wn. App. at 595.

[41] Br. of Resp't at 4, 5, 6, 8, 10, 13, 14, 16.

the taxpayer affirmatively agrees to a proposed deficiency assessment or seeks a final determination by the IRS appeals office.[42] Indeed, where the IRS fails to audit tax returns and make assessments within three years, "no loss would have been suffered and plaintiffs-appellants would have had nothing to gain from filing suit."[43] Thus, it makes no sense for claims for negligent preparation of state tax returns to depend on discovery of negligence with respect to federal tax returns.

¶31 Because Murphey's position is supported by statute and by the weight of authority addressing when an injury occurs to trigger the limitations period in negligent tax preparation cases, we hold his claim was timely. We reverse the award of summary judgment in favor of Grass and remand for further proceedings.

GROSSE and COX, JJ., concur.

Review denied at 173 Wn.2d 1022 (2012).

---

[42] *Feddersen*, 9 Cal. 4th at 612.

[43] *Streib v. Veigel*, 109 Idaho 174, 178, 706 P.2d 63 (1985); *see also Feddersen*, 9 Cal. 4th at 621 (IRS must assess a tax deficiency within three years from the date of the tax return).