Wachtler, J.
Early in 1972, the Belle Harbor Realty Corp. (Belle Harbor) submitted to the City of New York a new building application for the construction of a four-story nursing home. To secure a written permit from the Commissioner of Buildings as required by the Administrative Code (Administrative Code of City óf New York, § C26-109.1) a builder must first obtain approval of his building plans from the appropriate *510 departments (Administrative Code, § 026-108.8). This procedure is designed to insure compliance with the requirements of the Building Code and other. applicable laws and regulations. Between July 6 and September 25, 1972 the requisite approvals were issued to Belle Harbor by the Department of Buildings, the Department of Water Resources and the State Board of Social Welfare.
Prior to the issuance of the written permit, citizens concerned with the inadequacy of existing sewerage facilities commenced an action against the city and Belle Harbor seeking to enjoin the city from issuing the permit (Oetjen v. Sigman, Index No. 1296 11/72). The city cross-moved for dismissal contending that the petitioners lacked standing and that the issuance of the work permits was a ministerial act in light of the approvals evidencing Belle Harbor’s compliance with all the building and zoning requirements. This motion was granted and the complaint was dismissed.
Shortly thereafter in response to numerous complaints of sewer backups the city investigated the sewerage facilities at the proposed site. The city discovered that the municipal sanitary sewers which would serve the proposed home had been installed in 1889, had six inch rather than eight inch pipes, and required the repeated removal of sand indicative of open joints. The sum of this inquiry was that the 'sewers were “ grossly inadequate ” for present use and therefore new sewer connections were unadvisable:
On the basis of this information the city notified Belle Harbor that the prior approvals were revoked. The city also indicated that plans were being made to consider a new sewer system for the area.
Belle Harbor reacted by commencing this article 78 proceeding to annul the city’s revocation of its approval of the new building application and to compel the city to reissue all approvals and to issue all permits necessary to complete the construction of the proposed nursing home. Belle Harbor contended that the city had succumbed to community pressure thereby abdicating its civic professional responsibility. Moreover, Belle Harbor asserted that the revocations by the city was a delaying tactic until such time as the city council could act on proposed zoning changes which would adversely affect the *511 construction of a nursing home in that area. The city responded by denying that it had bowed to political pressure. The city contended that the original approval for the sewer connections was given at a time when it did not know about the deteriorated condition of the sewers; consequently such approval was a mistake susceptible of revocation in the proper exercise of its police power.
Special Term agreed finding that the revocation of approvals and refusal to issue the permits were occasioned through a reasonable exercise of police power and dismissed the petition.
The Appellate Division reversed and directed the city to issue the requisite approvals and permits. Belying on Westwood Forest Estates v. Village of South Nyack (23 N Y 2d 424) the Appellate Division majority held that it was impermissible for the city to punish a single landowner because of its own failure to construct adequate sewerage facilities.
We disagree with the Appellate Division majority and find that Westwood Forest Estates (supra) is not dispositive of the case at bar. In Westwood we held that a village could not utilize its zoning power to prohibit the new construction of multiple dwellings in order to avoid complying with State and county antipollution efforts. The situation before us is distinguishable in that it involves the general police power rather than the zoning power, and the sanitation problem is one of immediate direct impact rather than a generalized one. In contrast to the sewer system in Westwood which was operating at only 75% of capacity and was indisputably adequate, the system in Belle Harbor is alleged to be “ an already overloaded, overflowing, backing-up, antiquated sewer system.”
While we have consistently recognized the right of a municipality pursuant to its police powers to prevent conditions dangerous to public health and welfare (see, e.g., Matter of Wulfsohn v. Burden, 241 N. Y. 288; Shepard v. Village of Skaneateles, 300 N. Y. 115; Rodgers v. Village of Tarrytown, 302 N. Y. 115; 1 Rathkopf, Law of Zoning and Planning, ch. 2 [1973 Supp.]) we have also insisted that any such restrictions or limitations must be kept “ 1 within the limits of necessity ’ ”. (Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 230; People ex rel. St. Albans-Springfield Corp. v. Connell, 257 N. Y. 73.)
*512 Consequently a municipality may not invoke its police powers solely as a pretext to assuage strident community opposition. To justify interference with the beneficial enjoyment of property the municipality must establish that it has acted in response to a dire necessity, that its action is reasonably calculated to alleviate or prevent the crisis condition, and that it is presently taking steps to rectify the problem. "When the general police power is invoked under such circumstances it must be considered an emergency measure and is circumscribed by the exigencies of that emergency.
The order of the Appellate Division should be reversed without costs, and the petition dismissed without prejudice to the commencement of a proceeding within 30 days from the date hereof to determine whether the revocation of the necessary building approvals was warranted as necessary to prevent a condition dangerous to public health and welfare or whether such revocation-was based solely.on a pretext that the construction would create a condition dangerous to public health and welfare.
Chief Judge Bbeitel and Judges Jasen, Gabbielli, Jones and Stevens concur; Judge Babin taking no part.
Order reversed, etc.