BOARD OF TRUSTEES OF THE VILLAGE OF LANSING, Appellant, v PYRAMID COMPANIES, Respondent. (Action No. 1.)

PYRAMID COMPANIES, Respondent, v BOARD OF TRUSTEES OF THE VILLAGE OF LANSING, Appellant. (Action No. 2.)

Third Department, April 8, 1976

*Helen Amdur* for appellant.

*Wiggins, Tsapis, Holmberg & Gersh (Dirk A. Galbraith* of counsel), for respondent.

MAHONEY, J. On April 19, 1974 the Town Board of the Town of Lansing, Tompkins County, after reviewing the application of the Pyramid Companies (Pyramid) issued a building permit for the construction of an 80-store enclosed shopping mall in a commercially zoned area on approximately 66 acres of land, covering approximately 374,000 square feet. In connection with its application Pyramid submitted to the Town Planning Board a traffic impact study demonstrating that it would be necessary to widen North Triphammer Road, as the access road along the easterly edge of the subject area, from a two-lane section to a four-lane section so as to provide an adequate number of lanes to accommodate expected increased vehicular traffic. At the time of the application submission by Pyramid, North Triphammer Road was a county road. Thereafter, on April 30, 1974 the Town Board of the Town of Lansing adopted a Land Use Control Ordinance. The Village of Lansing was incorporated on December 19, 1974 and on January 14, 1975 the Town Board issued a second permit to Pyramid wherein it recited "that the site plan and the exhibits herewith comply with all applicable regulations, standards and requirements of the Ordinance [Land Use Control Ordinance] * * * and * * * RESOLVED, that * * * (2) the street

system and access driveways provide for the orderly, safe and efficient handling of traffic * * * and * * * RESOLVED, that in view of the fact that petitioner has incurred substantial financial expense in planning, leasing, designing and engineering activities and in clearing the premises and commencing construction, there is hereby reserved unto the petitioner all rights accruing to it pursuant to Building Permit No. 26, issued April 19, 1974." On July 1, 1975 the County of Tompkins, by resolution duly passed by the County Board of Representatives, abandoned North Triphammer Road (Highway Law, § 115-a) to the Village of Lansing and said road became a village street.

The Village of Lansing, now charged with the exclusive control and supervision of North Triphammer Road as part of the village highway district (Village Law, § 6-602), elected to exercise its police powers (Village Law, § 4-412) and, accordingly, revoked both building permits previously issued to Pyramid. Pyramid, despite such revocation, continued to develop the subject area. The village within the context of an action for a permanent injunction moved for preliminary relief. Pyramid cross-moved to dismiss the complaint and, in a separate article 78 proceeding, sought annulment of the village resolution revoking its permits. The trial court denied the application for a preliminary injunction, dismissed the village's complaint and annulled the resolution vacating the permits. These appeals ensued.

The first issue raised by the appellant village to the effect that both permits were "special", and therefore, void in their inception, can be disposed of speedily. Nowhere in the village's complaint, affidavits in support of its motion for a preliminary injunction or in the record is there any evidence that the permits were being challenged because they were illegally issued. This issue was raised *de novo* in appellant's briefs. This court has consistently held that matters not raised in the pleadings below will not be considered for the first time on appeal *(Bonesteel v Emma Willard School,* 33 AD2d 625; *Baker v Topping,* 15 AD2d 193, mot for lv to app den 11 NY2d 644). Further, appellant's charge that the permits were void *ab initio* was heretofore disposed of by this court in *Sanderson v Town Bd. of Lansing* Sup Ct, Tompkins County, Sept. 10, 1975, app dsmd Jan. 10, 1976).

The determinative question then is whether validly issued building permits may be revoked by a village in the exercise

of its police powers because of changed circumstances, or, as appellant alleges, because "it has been found that there is a significant deviation from the plan upon which such permit was issued." (Town of Lansing Zoning Ordinance, § 1701.) Clearly, the situation before us involves the limited police powers of the village (Village Law, § 4-412), rather than its zoning authority, there being no evidence in this record that the recently incorporated village ever acted pursuant to sections 7-710 and 7-712 of the Village Law to create either a zoning commission or a board of appeals.

The courts of this State have consistently recognized the right of a municipality, pursuant to its police powers, to act to prevent conditions injurious to public health and welfare (*Rodgers v Village of Tarrytown,* 302 NY 115; *Shepard v Village of Skaneateles,* 300 NY 115; *Matter of Wulfsohn v Burden,* 241 NY 288), but have also insisted that any such action be kept "within the limits of necessity" *(Matter of Belle Harbor Realty Corp. v Kerr,* 35 NY2d 507, and case cited therein at p 511). Further, while a municipality may not invoke such powers to assuage a municipal annoyance, it may act in response "to a dire necessity, that its action is reasonably calculated to alleviate or prevent the crisis condition, and, that it is presently taking steps to rectify the problem." (p 512.) In justification of its posture as a municipality faced with a "dire necessity", appellant presents itself as a recently incorporated village, not in being when the Town of Lansing issued the first permit and only in being one month before the issuance of the second, having a population of only 2,600 and an annual budget of $134,381, now being asked to absorb the costs of widening North Triphammer Road at a cost of $540,000, four times its annual budget, solely because the County of Tompkins unilaterally decided to abandon the road to the village. That such a precipitous change should cause consternation among the villagers is understandable; that it creates a condition dangerous to public health and welfare that justifies the drastic remedy of permit revocation as an emergency measure, requires a study of alternatives.

In *Matter of Belle Harbor Realty Corp. v Kerr (supra),* the City of New York, after issuing a permit to build a nursing home, discovered that the sewage system in the area of proposed construction was "grossly inadequate" to service the facility and revoked the permit. The Court of Appeals affirmed the city's act as an "emergency measure". There was no

alternative to the city's action. Herein, however, as noted below, "the situation does not seem quite so desperate". In a sense, both Pyramid and the village are in the same condition they were before the road abandonment. Pyramid; at time of application, knew it could not compel the county to enlarge North Triphammer Road and it knows it cannot compel the village to so act. Therefore, it is prepared to go forward with construction of the mall faced with the very real possibility that the subject road will remain as it is. Except as to costs, if it elects to improve the road, the village's position is the same. If the county had retained authority over the road, the mall would be built and the same traffic problem would obtain. Next, the village can, as suggested by the trial court, improve North Triphammer Road to the extent permitted by its budget, or seek assistance from the Town of Lansing and County of Tompkins, both entities having a real interest in the development of the area. Accordingly, we find the factual situation herein not only inapposite to that in *Matter of Belle Harbor Realty Corp. v Kerr (supra)*, but, inadequate to show that the revocation would serve the public health, safety and welfare *(Matter of Fulling v Palumbo,* 21 NY2d 30).

The order and judgment should be affirmed, without costs.

GREENBLOTT, J. P., SWEENEY, HERLIHY and REYNOLDS, JJ., concur.

Order and judgment affirmed, without costs.