[624 NYS2d 170]

Cellular Telephone Company, Doing Business as Cellular One, Respondent, v Village of Tarrytown et al., Appellants.

Second Department, March 13, 1995

58

**APPEARANCES OF COUNSEL**

*Jeffrey S. Shumejda,* North Tarrytown, for appellants.

*Cuddy & Feder,* White Plains *(William S. Null* of counsel), for respondent.

**OPINION OF THE COURT**

Sullivan, J.

The instant controversy poses the question of whether a municipality may enact a moratorium prohibiting the use of property for the enhancement of cellular telephone service based solely upon a scientifically unfounded public perception that such use will create adverse health risks to those residents in the surrounding community. We answer this question in the negative.

The plaintiff, Cellular Telephone Company, doing business as Cellular One, is a business entity and a public utility which is engaged in providing cellular telephone communication to the general public. According to the allegations of the complaint, due to the purported existence of gaps in cellular telephone service in the geographical area of the defendant Village of Tarrytown, the plaintiff sought approval of a plan to install nine cellular panel antennas atop an office building in the Village in February 1994. The plaintiff submitted a site plan application to the Planning Board of the Village and appeared before the Planning Board in April, May, and June 1994 to provide evidence regarding the proposed plan. As the defendants acknowledge, the Planning Board subsequently adopted a resolution approving the application and determining that it would not result in any adverse environmental impact. Furthermore, the plaintiff appeared before the Architectural Review Board (hereinafter the ARB) of the Village in May 1994, and the ARB determined that the plan was acceptable and would not create a detrimental visual impact. The plaintiff was then required to seek a variance from the Zoning Board of Appeals (hereinafter the ZBA) of the Village in order to implement the plan.

During June, July, and August 1994, the plaintiff presented evidence to the ZBA. To address the concerns of some area residents regarding any potential adverse health effects of the plan, the Village retained the services of an independent research company with expertise in epidemiology as it relates to radiofrequency and power frequency fields. In an ensuing report, the epidemiologist who evaluated the plan determined, among other things, that the plaintiff's proposed cellular transmitting site, even when combined with other cellular transmitting sites in the area, "will not expose any of the residents to levels of radiofrequency (RF) electromagnetic fields that pose a risk to health". In fact, an engineer with specialized expertise in the assessment of exposure from radiofrequency sources conducted an independent evaluation of the issue and conservatively estimated that the impact of multiple cell sites would be no greater than 1/96 of the acceptable exposure standard. In responding to the concerns of some residents about long-term exposure, the report observed in part as follows: "There have been no long-term studies of human exposures to the specific frequencies that are associated with cellular telephone antennas, but this is also true for the specific frequencies used for television, AM radio, or FM

radio. There are no long-term studies of exposures at these frequencies either. Although the epidemiology studies of human populations exposed in the RF range are limited, the available studies have not indicated that cancer and other health effects occur in individuals who have been exposed for several years at, or below, the recommended standard". Similarly, the report discounted the materials submitted by area residents opposed to the plaintiff's plan, noting that "a large proportion of the materials submitted pertain *[sic]* to electric and magnetic fields emitted from power lines, a source which, at the extremely low frequency of 60 Hertz, is not considered relevant to assessing health impacts from exposures at the ultra-high frequency used by cellular transmitting antennas, 869-894 million Hertz".

It appears that on August 8, 1994, several of the members of the ZBA informally indicated their intention to adopt a resolution approving the plaintiff's application at a subsequent meeting. On September 7, 1994, before the aforementioned meeting of the ZBA was scheduled to occur, the defendant Board of Trustees of the Village of Tarrytown (hereinafter the Board) adopted Local Laws of 1994, enacting chapter 212 of the Code of the Village of Tarrytown, entitled "Moratorium on Installation of Antennas" (hereinafter chapter 212). Chapter 212, *inter alia,* precluded the granting of any municipal approvals which would result in the erection of any antennas in the Village based in part upon legislative findings that "long-term scientific studies are necessary on the emissions of the electromagnetic frequency radio emissions" and that "appropriate measures must be taken for a reasonable interim period while the effects of the electromagnetic frequency radio emissions are studied by the [Board]". Chapter 212 was to remain in effect for three months, subject to extension.

The plaintiff subsequently commenced an action, *inter alia,* to declare chapter 212 null and void, and further moved to preliminarily enjoin its enforcement pending determination of the action. However, on the motion for the preliminary injunction, the Supreme Court set aside chapter 212 as null and void in an order dated October 3, 1994. On appeal, this Court reversed the order on the ground that the Supreme Court's resolution of the action on the merits had been procedurally premature, since the defendants had not been notified that the Supreme Court would treat the motion for a preliminary injunction as one to finally determine the action *(see, Cellular Tel. Co. v Village of Tarrytown,* 210 AD2d 196). However, this

Court partially granted the plaintiff's motion for a preliminary injunction and remitted the matter for further proceedings, finding that the plaintiff had demonstrated, *inter alia,* "the likelihood of ultimate success on the merits" *(Cellular Tel. Co. v Village of Tarrytown, supra,* at 197).

On the same date that the Supreme Court invalidated chapter 212 (i.e., October 3, 1994), the Board adopted the local law at issue in this action—Local Laws of 1994, enacting chapter 213 of the Code of the Village of Tarrytown, entitled "Temporary Moratorium on Installation of Antennas" (hereinafter chapter 213). As its title suggests, the text of chapter 213 closely followed the language of its predecessor, and precluded the issuance of any municipal approvals relating to the erection of antennas in the Village. Chapter 213 further provided that it would remain in force until December 7, 1994, subject to extensions by the Board. The legislative findings underlying chapter 213 were similar to those set forth in chapter 212, inasmuch as the Board found that "a review of the long-term scientific studies is necessary on the emissions of the electromagnetic frequency radio emissions" and that it required "a reasonable interim period" in which to study "the effects of the * * * emissions". Furthermore, the statement of legislative intent in chapter 213, as in chapter 212, indicated that the moratorium was designed "to protect the health, safety and welfare" of Village citizens and "to preserve the intended objectives of the Zoning Code". Most significant, however, was the "BACKGROUND" statement set forth in both chapters 213 and 212, which candidly admitted that the adoption of these local laws was prompted by the scientifically unfounded fears of some members of the community: "The Village of Tarrytown is concerned about the proliferation of transmitting and receiving antennas. Recently, the Zoning Board of Appeals of the Village of Tarrytown has been compelled, based on the health studies presented to it, to approve variances for the installation of cellular telephone phone antennas within the confines of the Village of Tarrytown. *Despite numerous protestations by individuals within the Village, the scientific evidence presented indicated that the health concerns regarding such antennas were at the time insufficient to warrant denial of area variances. However, there is in the community a perception that exposure to such fields may adversely impact the health of individuals exposed to such emissions over the long term"* (emphasis supplied).

The plaintiff promptly commenced the instant action to declare chapter 213 null and void and to permanently enjoin its enforcement, and also moved for a preliminary injunction. The defendants cross-moved to dismiss the complaint pursuant to CPLR 3211 or, alternatively, for summary judgment pursuant to CPLR 3212. By order and judgment entered November 2, 1994, the Supreme Court in effect granted summary judgment in favor of the plaintiff and declared chapter 213 null and void. The court reasoned in part that the chapter 213 moratorium prevented the plaintiff from performing its mandated service as a public utility, that "[u]nequivocal unrefuted studies" had demonstrated that the antenna emissions would pose "no risk to the health of the Village citizens", and that the Village could not enact the moratorium based solely on a public "perception" of health risks. The defendants currently appeal.

The parties observe that the chapter 213 moratorium expired on December 30, 1994. As a result, the defendants contend that the instant appeal has been rendered academic and should be dismissed. However, while a court ordinarily will not entertain a matter where the specific controversy between the parties is no longer extant, an exception to the mootness doctrine exists where the controversy is likely to recur, typically evades review, and involves a substantial and novel issue (see, Matter of Hearst Corp. v Clyne, 50 NY2d 707). The instant appeal presents such a controversy.

The Board has adopted successive overlapping short-term moratoria pursuant to chapters 212 and 213, and the plaintiff further alleges that during the pendency of this appeal, additional legislation has been enacted to continue the restriction on the installation of cellular antennas within the Village. Furthermore, the plaintiff has submitted additional material in the form of newspaper articles which indicate that the plaintiff is encountering similar difficulties in the installation of cellular transmitting and receiving equipment in other communities. Thus, there is a strong likelihood that this controversy will recur between these parties or between other parties similarly situated. Furthermore, the controversy typically evades review because of the relatively brief duration of the moratoria. Indeed, appellate review of legal challenges to such moratoria is generally thwarted by the expiration of the local law and the adoption of successor legislation which produces the same effect (see, Mitchell v Kemp, 176 AD2d 859

[court will review merits of challenge to moratorium legislation, notwithstanding the expiration of that legislation, where the municipality has enacted one short-term moratorium after another for a period of nearly five years]). Furthermore, the recognition of the plaintiff and similar business entities as public utilities charged by law with providing cellular service *(see, Matter of Cellular Tel. Co. v Rosenberg*, 82 NY2d 364) and the paucity of decisional authority addressing whether and to what extent a municipality may adopt moratoria which have the effect of disrupting or limiting such service persuade us that the instant appeal presents a sufficiently substantial and novel issue. Accordingly, the mootness doctrine is not a bar to appellate review in this case *(see, e.g., Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 [People]*, 72 NY2d 307, *cert denied* 488 US 966; *Mitchell v Kemp, supra).*

■ The defendants contend that the Supreme Court erred in denying their motion pursuant to CPLR 3211 to dismiss for lack of jurisdiction. The gravamen of the defendants' claim is that the summons originally served upon them in this action was jurisdictionally defective since it did not bear the date upon which it was filed with the clerk of the court as required by CPLR 305 (a). We disagree.

As part of the new commencement-by-filing procedure in Supreme and County Courts, CPLR 305 (a) provides that a summons "shall bear the index number assigned and the date of filing with the clerk of the court". In the case before us, the plaintiff did in fact purchase an index number prior to service of the summons on or about October 6, 1994, and the index number was set forth on the summons which was served upon the defendants. Although the plaintiff neglected to include the date of filing on the summons, the complaint was served along with the summons and both documents unequivocally stated that the nature of the action was to challenge the adoption of chapter 213 on October 3, 1994. Moreover, it is undisputed that on October 17, 1994, the plaintiff served a duplicate copy of the summons and complaint upon the defendants which did set forth the filing date of October 5, 1994. Accordingly, while we strongly encourage full compliance with the requirements of the commencement-by-filing provisions, we find that the initial omission of the filing date under these circumstances did not result in any prejudice to the defendants and dismissal of the action was not warranted *(see, Yeger v Yeger*, NYLJ, Apr. 2, 1993, at 33, col 1; Alexander, 1993 Supp Practice

Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR C305:1, 1995 Pocket Part, at 49).

■ ■ The defendants further contend that the Supreme Court committed procedural errors by (1) granting final judgment in favor of the plaintiff although the plaintiff had only moved for preliminary injunctive relief, and (2) determining that the chapter 213 moratorium was void because it was adopted for an improper and unreasonable purpose, even though the plaintiff did not allege such a claim in its complaint. These contentions are without merit.

■ While we previously determined that the court could not treat a motion for a preliminary injunction as one to finally determine the action without notifying the parties of its intention to do so (see, Cellular Tel. Co. v Village of Tarrytown, 210 AD2d 196, supra), the court had the authority to grant final judgment in this action by reason of the defendants' cross motion which, inter alia, sought summary judgment. Indeed, the defendants expressly averred in support of their application that no issues of fact existed and that they were entitled to judgment as a matter of law pursuant to CPLR 3212. As set forth in CPLR 3212 (b), "[i]f it shall appear that any party other than the moving party is entitled to a summary judgment, the court may grant such judgment without the necessity of a cross-motion". Therefore, "a motion for summary judgment, irrespective of by whom it is made, empowers a court * * * to search the record and award judgment where appropriate" (Grimaldi v Pagan, 135 AD2d 496). Accordingly, the Supreme Court had the authority to search the record and grant judgment in favor of the plaintiff in this case.

■ We likewise disagree with the defendants' claim that the purpose and motive underlying the adoption of chapter 213 were not issues placed before the Supreme Court by the plaintiff's complaint. Rather, the complaint detailed the absence of any proof that the proposed installation of antennas would pose health risks to the surrounding residents. The complaint further alleged that the Board's adoption of the moratorium was illegal and had frustrated the procedures and determinations of the Planning Board and ZBA. Additionally, any question regarding whether the allegations of the complaint encompassed a challenge to the purpose and reasonableness of chapter 213 was dispelled by the affidavits submitted in support of the plaintiff's motion for a preliminary injunction and in opposition to the defendants' cross motion.

Indeed, those affidavits expressly and exhaustively contended that the chapter 213 moratorium was enacted for an improper purpose and without any scientific basis. Hence, the Supreme Court was entitled to consider that contention, as well as the defendants' response thereto, and the defendants' present attempt to urge an artificially narrow interpretation of the complaint and the motion papers is unavailing.

■ Turning to the question of whether the Board's adoption of chapter 213 was proper, we agree with the Supreme Court that the enactment is null and void. Whether judged by the standards applicable to an exercise of the Village's general police power or its zoning authority, the moratorium cannot stand. An exercise of police power which interferes with the enjoyment of property must be a reasonable, necessary, and limited response directed at redressing a genuine crisis or emergency *(see, Matter of Charles v Diamond,* 41 NY2d 318), while a zoning enactment must be reasonably related to and in accord with a comprehensive plan governing land use *(see, Matter of Golden v Planning Bd.,* 30 NY2d 359, *appeal dismissed* 409 US 1003; *Taylor v Incorporated Vil. of Head of Harbor,* 104 AD2d 642). However, "a municipality may not invoke its police powers solely as a pretext to assuage strident community opposition" *(Matter of Belle Harbor Realty Corp. v Kerr,* 35 NY2d 507, 512), nor may a zoning enactment exceed the municipality's powers or operate for the accomplishment of purposes extraneous to land use *(see, De Sena v Gulde,* 24 AD2d 165). In the field of moratoria, it is well settled that the enactment of a moratorium upon certain land use or development within a municipality will be considered a valid stopgap or interim measure where it is reasonably designed to temporarily halt development while the municipality considers, *inter alia,* comprehensive zoning changes *(see, 119 Dev. Assocs. v Village of Irvington,* 171 AD2d 656; *Matter of Dune Assocs. v Anderson,* 119 AD2d 574). However, the moratorium must be for a valid and reasonable purpose and " 'the life of such legislation may not exceed a reasonable period of time' " *(Mitchell v Kemp,* 176 AD2d 859, 860, *supra; Matter of Lakeview Apts. v Town of Stanford,* 108 AD2d 914; *Matter of New York City Hous. Auth. v Commissioner of Envtl. Conservation Dept. of State of N. Y.,* 83 Misc 2d 89).

Notwithstanding the presumption of validity which chapter 213 enjoys *(see, De Sena v Gulde, supra),* the plaintiff has come forward with sufficient evidence to demonstrate that the moratorium in this case fails to comply with the foregoing

standards. Fundamentally, chapter 213 clearly was not adopted for the proper and reasonable purpose of responding to a genuine crisis or dire necessity. Although the moratorium on antennas purports to protect the health, safety, and welfare of Village residents, there is not a scintilla of evidence in the record indicating that the installation of cellular antennas in accordance with the plaintiff's proposed plan will be inimical to the well-being of the Village citizenry. Rather, the overwhelming and unrefuted medical and scientific evidence is to the contrary. The analytical and evaluative proof submitted by the plaintiff to the Planning Board and ZBA, as well as by the independent firm retained on behalf of the Village, unequivocally established that the proposed antenna installation would generate only a minute fraction of the acceptable limit for radiofrequency emissions. This same evidence further demonstrated that the proposed plan, in conjunction with other cell sites, would not pose any health risk to Village residents, and that available studies indicated that no adverse health effects result from exposure to radiofrequency emissions which fall within the accepted standards. Indeed, the "Background" statement of chapter 213 expressly acknowledged the total absence of any contrary evidence to warrant denial of the plaintiff's area variance application "[d]espite numerous protestations by individuals within the Village". Nevertheless, the moratorium was adopted based on a "perception" in the community that radiofrequency emissions "may adversely impact the health of individuals exposed to such emissions over the long term". In the absence of any supporting proof, the Board could not rationally rely upon the speculative and unfounded "perception" of health risks by some Village residents as a basis to declare a moratorium on the installation of cellular service antennas (see, Matter of Belle Harbor Realty Corp. v Kerr, supra; see also, Matter of Faymor Dev. Co. v Board of Stds. & Appeals, 45 NY2d 560 [where city permitted area residents to delay builder's attempt to acquire vested rights, board could not deny reinstatement of building permit for failure to acquire those rights]; De Sena v Gulde, supra [amendment of zoning ordinance in response to pressure from residents and in contravention of comprehensive plan is void]).

The defendants cite Criscuola v Power Auth. (81 NY2d 649) to support their claim that the perception of health risks need not be reasonable or scientifically based in order to justify the adoption of chapter 213. This contention is without merit. In

*Criscuola,* the claimant in an eminent domain proceeding sought compensation for a decrease in the market value of his property due to "cancerphobia", i.e., a public perception that the Power Authority's acquisition of a power line easement over the property would place occupants of the premises at a high risk of developing cancer. The Court of Appeals held that the claimant was not obligated to demonstrate that "cancerphobia" was rational or supported by scientific evidence in order to pursue his claim, inasmuch as the market value of the premises could be adversely impacted regardless of whether the public perception was reasonable. The *Criscuola* decision has no bearing on the issue of whether a municipality may enact legislation restricting property rights based solely upon the public's unreasonable fear of health risks, an issue which, on the present record, must be resolved in favor of the plaintiff.

 Similarly, the dearth of studies regarding long-term effects of exposure to radiofrequency emissions fails to justify the adoption of the moratorium. While the text of chapter 213 provided that it was designed to halt the installation of antennas pending the Board's review of such long-term effects, the evidence in the record demonstrated that few, if any, long-term studies exist. Moreover, the expert report prepared for the Village stated that the performance of such studies does not appear to be a high priority in the scientific community because existing epidemiological and laboratory data fail to suggest any correlation between permissible levels of radiofrequency emissions and the occurrence of disease. In short, the Board clearly had ample time to review the studies which already exist, and it could not postpone the installation of antennas indefinitely by passing successive moratoria while it commissioned long-term studies or awaited the results of studies which might be conducted by others. Indeed, such action would render the moratoria unreasonable in duration *(see, e.g., Mitchell v Kemp,* 176 AD2d 859, *supra; Matter of Lakeview Apts. v Town of Stanford,* 108 AD2d 914, *supra; Duke v Town of Huntington,* 153 Misc 2d 521).

In accordance with the foregoing discussion, we find that the chapter 213 moratorium was not a legitimate exercise of the police or zoning powers of the Village and was properly

declared invalid. In view of our analysis, we have no occasion to consider the remaining contentions of the plaintiff. Thus, the order and judgment is affirmed.

MANGANO, P. J., BALLETTA and MILLER, JJ., concur.

Ordered that the order and judgment is affirmed, with costs.