OPINION OF THE COURT
Robert S. Rose, J.
In this combined CPLR article 78 proceeding and action for a declaratory judgment, petitioner City of Binghamton applies for an order nullifying the 1990 legislative resolution by respondent County of Broome to charge back 100% of the expenses of respondent Board of Elections and restraining respondents from collecting those chargebacks. Petitioner asserts that respondent’s 1990 Resolution No. 90-533 and 1995 Resolution No. 95-568 authorizing such chargebacks in the amount of $60,263 were illegal because respondents charged back 1994 election expenses not specifically attributable to petitioner under sections 4-136 and 4-138 of the Election Law.
Petitioner relies on a 1992 opinion of the New York State Comptroller (1992 Opns St Comp No. 92-26) stating that expenses of the Board of Elections are primarily a county charge and that only those types of expenses specifically authorized by statute are to be apportioned and charged back to municipalities. Petitioner argues that the operating expenses of the Board of Elections, such as salaries and fringe benefits, as opposed to the actual costs of conducting elections in the municipalities, are not authorized to be charged back.
The court notes that petitioner’s applications for review of respondents’ chargebacks for earlier years were previously denied on jurisdictional and Statute of Limitations grounds by this court’s decisions and orders dated May 15, 1995 and July 20, 1995. Also, for the reasons set forth in the latter decision *794 and order, the court will treat petitioner’s current application primarily as one pursuant to CPLR article 78 rather than as a motion for summary judgment in a declaratory judgment action.
In response, respondents assert that the determination to charge back such expenses was instigated by an audit by the State Comptroller in 1991 and was consistent with the way the Election Law had been interpreted by the Broome County Commissioners of Election to permit any or all expenses of the Board to be apportioned and charged back. They also assert that this has been their policy since 1991 and that this policy was consistent with an earlier opinion (1987 Opns St Comp No. 87-45) of the State Comptroller. Respondents also argue that petitioner lacks standing to maintain this proceeding because it has not been harmed financially by these chargebacks since such charges were not included in petitioner’s budget and were levied separately on the tax bills issued by petitioner to its taxpayers. Finally, respondents contend that the court lacks jurisdiction of this matter because the notice of petition did not state the date of commencement of the proceeding as required by CPLR 305 (a).
Turning first to respondents’ procedural objection, the court finds that petitioner has provided sufficient proof to establish that this proceeding was commenced by filing on March 11, 1996, and that respondents have not alleged or shown any prejudice arising from petitioner’s failure to state the filing date on its notice of petition. Since controlling appellate authorities have held that an initial failure to state the date of filing does not render a notice of petition jurisdictionally defective (see, Bevona v Malek, 224 AD2d 317 [1st Dept 1996]; Cellular Tel. Co. v Village of Tarrytown, 209 AD2d 57, 64, Iv denied 86 NY2d 701), the lack of the date of filing on the notice of petition served here will be deemed a technical defect which does not implicate the jurisdiction of the court or otherwise provide grounds for dismissal of the petition.
Turning next to the issue of standing, the court notes that "[u]nder traditional rules, petitioner has standing if (1) the interest he asserts is arguably within the zone of interest to be protected by the statutory or constitutional provisions he seeks to enforce; (2) respondents’ decision is shown to have a harmful effect upon him; and (3) there is no clear legislative intent negating review” (Matter of Axelrod v Sobol, 78 NY2d 112, 115).
*795 Here, respondents do not deny that the interest of petitioner, as one of the municipal entities mentioned in section 4-136 (1) of the Election Law, is arguably within the zone of interest of the statute. The statute provides at least an ambiguous limitation upon what election expenses may be charged back to municipalities. Nor do respondents contend that there is some legislative intent to preclude review of the matter. Instead, respondents rely on their claim that petitioner has not been harmed by respondents’ action because the expense of paying the chargebacks was not included in petitioner’s budget, but merely passed along to City taxpayers as a discrete item on their tax bills.
In this respect, a party has standing when its personal or property rights will be directly and specifically affected by the complained-of action (see, Marcus v Village of Mamaroneck, 283 NY 325). Here, it must be remembered that respondents are charging back the election expenses to petitioner and not to petitioner’s taxpayers. Thus, while petitioner may avoid including the chargebacks in its budget by separately collecting and remitting the taxes, petitioner still is the ultimate party responsible for paying the chargebacks.
Furthermore, even in actions against the State, a political subdivision has standing to challenge legislative acts which, as here, affect the tax funds of the local governmental unit (see, Matter of Jeter v Ellenville Cent. School Dist., 50 AD2d 366), and to protect its home-rule rights to levy, collect and administer local taxes (see, Town of Black Brook v State of New York, 41 NY2d 486). Here, the chargebacks indisputably increase the tax burden upon petitioner’s taxpayers, and arguably affect both the tax funds available to petitioner and petitioner’s administration of its local taxes. Ultimately, if enough taxpayers declined to pay the charge-back portion of their assessments, petitioner would itself become responsible for paying the chargebacks from other revenues. Thus, there can be little dispute that petitioner will be adversely affected by respondents’ actions and the court finds that it does have standing to prosecute this proceeding.
Turning finally to the merits of the petition, the court finds the Comptroller’s opinion upon which petitioner relies to be quite persuasive. Although clearly inconsistent with the prior opinion upon which respondents rely, the 1992 opinion carefully examines the pertinent sections of the Election Law and is well reasoned in its statutory interpretation. The court has been unable to find any reported case law on the issue, and *796 the cited opinion provides ample support for petitioner’s argument.
To counter this authority, respondents essentially rely on the interpretation given to the statutes by respondent Board of Elections, and they argue that the pertinent sections can and should be read, as was done by the State Comptroller in the earlier opinion, to implicitly authorize the chargeback of virtually every expense of the Board of Elections and not just of those expenses directly attributable to the individual municipality.
However, respondents have presented no compelling reason, either factual or legal, to disagree with the more recent conclusions of the Comptroller. In pertinent part, the Comptroller’s opinion states: “Thus, these provisions of sections 4-138 [Election Law] and 361-a [County Law] establish a permissive procedure for expenses incurred by a county board of elections to be charged back to jurisdictions within the county. These provisions, however, do not specify which expenses are chargeable to jurisdictions within the county. Further, despite the use of the word 'apportionment’ in the titles of sections 4-138 and 361-a, they do not establish a method for such expenses to be apportioned among jurisdictions within the county (cf., e.g., Education Law, § 6304 [1] [c]; Real Property Tax Law, §§ 804 [1], 844 [1], 900 [1], 1314 [1], 1402 [3] [d]; Town Law, § 181 [1]). Therefore, read literally, sections 4-136 (3), 4-138 and 361-a do not authorize or require ‘all’ of the expenses of a board of elections to be charged back to the cities and towns.” (1992 Opns St Comp No. 92-26, at 6.)
Thus, a fair reading of the statute is that some, but not necessarily all, expenses of the Board of Elections may be charged back and that only those expenses expressly authorized by some statute may be charged back. As noted by the Comptroller (id., at 1-2), this change in interpretation has few practical consequences for taxpayers since the general expenses of a Board of Elections will continue to be borne by the county taxpayers whether billed as part of the county’s or the local municipality’s taxes.
These considerations lead the court to concur in the conclusion of the Comptroller that “these provisions [sections 4-136, 4-138, 361-a] authorize the charge back only of those expenses that are specifically chargeable to individual cities or towns pursuant to a provision of law, such as Election Law, § 4-136 (1) and (2)” (id., at 12). Since there is no dispute here that the expenses protested by petitioner have no specific authorization *797 for chargeback and would be precluded by the Comptroller’s interpretation of the statute, the court finds respondents’ quasi-administrative and administrative actions in resolving to charge back unauthorized election expenses and in seeking to collect those chargebacks to be in violation of the New York State Election Law, and hereby annuls respondents’ actions as invalid and improper.
Accordingly, the petition is granted. No motion costs are awarded.