In the Matter of ALBERT L. WARD, Individually and as Secretary of the State Committee of the Democratic Party of the State of New York, Respondent, against THOMAS J. CURRAN, as Secretary of State of the State of New York, Appellant.

Third Department, August 17, 1943.

*Nathaniel L. Goldstein,* Attorney-General (*Orrin G. Judd,* Solicitor-General; *Wendell P. Brown,* of counsel), for appellant.

*William J. O'Shea* (*Edward D. Burns, Henry Epstein, John P. McGrath* and *Andrew M. Lawler,* of counsel), for respondent.

*Per Curiam.* The office of Lieutenant-Governor has become vacant through the death of the Hon. Thomas W. Wallace. The question as to whether or not a successor should be elected at the coming general election is before this court. The Albany Special Term (FOSTER, J.), in a proceeding in the nature of mandamus, has determined that a Lieutenant-Governor should be elected at the general election to be held in 1943 and that the Secretary of State is directed to take appropriate steps in connection therewith. An appeal has been taken from that determination.

" The legislature shall provide for filling vacancies in office, and in case of elective officers, no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy." (N. Y. Const. art. XIII, § 8.) The Legislature there-

under, in the Public Officers Law, has enacted " § 42. Filling vacancies in elective offices. 1. A vacancy occurring before October fifteenth of any year in any office authorized to be filled at a general election, shall be filled at the general election held next thereafter, unless otherwise provided by the constitution, or unless previously filled at a special election." Thereunder the election of a successor is necessary unless the Constitution has made one unnecessary. It is asserted by the Attorney-General that the temporary president of the Senate has become Lieutenant-Governor under a constitutional provision, " * * * the senate shall choose a temporary president to preside in case of the absence or impeachment of the lieutenant-governor * * * " (N. Y. Const. art. III, § 9) and therefore that an election is unnecessary. He finds support for his position in section 41 of the Public Officers Law, which authorizes the Legislature, if in session, to appoint in the event of a vacancy in the office of Comptroller or of Attorney-General, but makes no mention of Lieutenant-Governor indicating, he says, a legislative construction that a vacancy in the latter office is filled under the constitutional provision earlier quoted (art. III, § 9). That constitutional provision has to do only with the duty of the Lieutenant-Governor to preside over the deliberations of the Senate. The Constitution provides in detail, also, as to the duties of the Lieutenant-Governor in the event of the absence or death of the Governor. However, he has state-wide duties other than to preside over the Senate and, when necessary, to act as Governor, which should be performed by an official elected in the State at large and not by one elected by the voters of a single senatorial district, as is the case of the temporary president of the Senate. This court in *Matter of Wing* v. *Ryan* (255 App. Div. 163, affd. 278 N. Y. 710) said " It is a fundamental principle of our form of government that a vacancy in an elective office should be filled by election as soon as practicable after the vacancy occurs. " Section 42, Public Officers Law, was enacted by the Legislature under a constitutional mandate to " provide for filling vacancies in office." It is not limited by section 41.

The chief duty of the Lieutenant-Governor is to preside over the Senate. The officer discharging that function should either be selected by the people or by the legislative body directly affected. Thus no one would question the wisdom of the constitutional provisions. The Comptroller and the Attorney-General head separate departments of the State government, with duties requiring continual attention, easily distinguishable

from those performed by the Lieutenant-Governor. This provides a sufficient reason for the distinction. Under the constitutional provisions and statutes mentioned, the term of office of the appointed successors would end with the "commencement of the political year next succeeding" the election, and the period during which the temporary president of the Senate would discharge a portion of the Lieutenant-Governor's duties would end at the same time.

The Legislature by chapter 303, Laws of 1847, determined that under the provisions in the 1846 Constitution, similar to those in the present Constitution, the temporary president of the Senate did not succeed to the office of Lieutenant-Governor. The constitutionality of the 1847 Act was not passed upon by the courts.

The order should be affirmed, without costs.

CRAPSER, J. (dissenting). Article IV, section 1, of the Constitution provides: "The executive power shall be vested in the governor, who shall hold his office for four years; the lieutenant-governor shall be chosen at the same time, and for the same term. The governor and lieutenant-governor shall be chosen at the general election held in the year nineteen hundred thirty-eight, and each fourth year thereafter."

Section 5 provides: "In case of impeachment of the governor or his removal from office, death, inability to discharge the powers and duties of the office, resignation, or absence from the state, the powers and duties of the office shall devolve upon the lieutenant-governor for the residue of the term, or until the disability shall cease."

Section 6 of the same article provides: "The lieutenant-governor shall possess the same qualifications and eligibility for office as the governor. He shall be president of the senate but shall have only a casting vote therein. If the office of governor become vacant and there be no lieutenant-governor, such vacancy shall be filled for the remainder of the term at the next general election happening not less than three months after such vacancy occurs; and in such case, until the vacancy be filled by election, or in case the lieutenant-governor be under impeachment or unable to discharge the powers and duties of the office of governor or shall be absent from the state, the temporary president of the senate shall act as governor during such inability, absence or the pendency of such impeachment."

The provisions of section 1 of this article IV of the Constitution contain the only provision for the election of Lieutenant-

Governor found in the Constitution, and it clearly provides that he shall be chosen at the general election held in the year 1938 and each fourth year thereafter. There is no provision in the Constitution or in any law for filling the office of Lieutenant-Governor at any general election.

Section 42 of the Public Officers Law provides: " 1. A vacancy occurring before October fifteenth of any year in any office authorized to be filled at a general election, shall be filled at the general election held next thereafter, unless otherwise provided by the constitution, or unless previously filled at a special election."

The office of the Lieutenant-Governor by the Constitution cannot be filled at any general election. It is clearly provided by section 1 of article IV that the election at which he shall be chosen was first held in the year 1938 and each fourth year thereafter, so that the provisions of subdivision 1 of section 42 of the Public Officers Law do not apply to the filling of the office of Lieutenant-Governor because it is otherwise provided by the Constitution and there can be an election for Lieutenant-Governor only once in four years at the time the Governor is elected.

Subdivision 3 of section 42 of the Public Officers Law says: " Upon the failure to elect to any office, except that of governor or lieutenant-governor, " which clearly indicates that the provisions of section 42 of the Public Officers Law do not apply to Lieutenant-Governor because the Constitution provides differently and does not permit his election in any year in which there is a general election.

Mandamus is an extraordinary legal remedy which can only be granted to enforce a clear legal right. The petitioner has failed to show any clear legal right to have an election of Lieutenant-Governor at any general election. A Lieutenant-Governor was elected in 1938, and another Lieutenant-Governor was elected in the election of 1942, and under section 1 of article IV of the Constitution there cannot be another election of Lieutenant-Governor until 1946.

The order appealed from should be reversed.

HILL, P. J., BLISS, HEFFERNAN and SCHENCK, JJ., concur in *Per Curiam* opinion; CRAPSER, J., dissents in opinion.

Order affirmed without costs.