OPINION OF THE COURT
William R LaMarca, J.
Plaintiffs, Dean G. Skelos and Pedro Espada, Jr., as duly elected members of the New York State Senate, move for an order preliminarily enjoining defendants, David Paterson, as Governor of the State of New York, Richard Ravitch, putative nominee for Lieutenant Governor of the State of New York, and Lorraine Cortes-Vazquez, as Secretary of State of the State of New York, and any other person acting in concert with them, from, inter alia, exercising any of the powers of the office of Lieutenant Governor of the State of New York, including but not limited to those powers relating to presiding over the Senate of the State of New York. Defendants oppose the motion and cross-move for an order dismissing the complaint in its entirety. In a subsequent order to show cause, defendants move for an order changing the place of trial of the action to Albany County on the ground of improper venue. The motions and cross motion are determined as follows:
This is an action for a declaratory judgment that New York Governor David Paterson cannot, consistent with the New York State Constitution, appoint Richard Ravitch as the Lieutenant *350 Governor of the State of New York. Plaintiffs also request a permanent injunction prohibiting the Governor from appointing Ravitch or any other individual to that office.
Article iy § 5 of the New York State Constitution provides, “[i]n case of the removal of the governor from office or of his or her death or resignation, the lieutenant-governor shall become governor for the remainder of the term.” On March 17, 2008, defendant, David Paterson, became Governor of the State of New York upon the resignation of Elliot Spitzer from that office.
Article iy § 6 of the NY Constitution provides for succession to the governorship, in the case of vacancy in the offices of both the Governor and Lieutenant Governor, and also in the case of vacancy in the office of Lieutenant Governor alone:
“In case of vacancy in the offices of both governor and lieutenant-governor, a governor and lieutenant-governor shall be elected for the remainder of the term at the next general election happening not less than three months after both offices shall have become vacant. No election of a lieutenant-governor shall be had in any event except at the time of electing a governor.
“In case of vacancy in the offices of both governor and lieutenant-governor or if both of them shall be impeached, absent from the state or otherwise unable to discharge the powers and duties of the office of governor, the temporary president of the senate shall act as the governor until the inability shall cease or until a governor shall be elected.
“In case of vacancy in the office of lieutenant-governor alone, or if the lieutenant-governor shall be impeached, absent from the state or otherwise unable to discharge the duties of office, the temporary president of the senate shall perform all the duties of lieutenant-governor during such vacancy or inability.”
It is to be noted that while article iy § 6 makes provision for succession to the office of Governor, in the case of vacancy in both offices, it makes no provision for anyone to act as Lieutenant Governor in those circumstances. Moreover, the Constitution clearly provides that the Lieutenant Governor is not to be elected separately. Article iy § 6 provides that the temporary president of the Senate shall “perform all the duties” of Lieutenant Governor, in case of vacancy in that office alone.
*351 However, the clear implication of section 6 is that the office of Lieutenant Governor is to remain vacant, in the event the temporary president is acting as Governor, or in the rare event the Senate is unable to elect a temporary president.
When Paterson became Governor, and the office of Lieutenant Governor first became vacant, the temporary president of the Senate was Senator Joseph Bruno, who had been reelected to that position by the Senate in 2007.[1] Later in 2008, plaintiff, Senator Dean Skelos, was elected by the Senate as temporary president to replace Senator Bruno. Presumably, while temporary president, each of these senators performed the duties of Lieutenant Governor.[2]
On January 7, 2009, when the Senate convened for the new legislative session, a majority of the senators elected Senator Malcolm Smith as the temporary president and majority leader. Presumably, Senator Smith also performed the Lieutenant Governor’s duties. In any event, on June 8, 2009, two Democratic members, Senators Pedro Espada, Jr. and Hiram Monserrate, joined 30 Republican senators in an effort to remove Smith as the temporary president. These senators purported to adopt a resolution that elected Senator Espada as the temporary president and plaintiff Skelos as the majority leader. Other members of the Senate, challenging the election of Espada and Skelos, commenced an action in Supreme Court, Albany County, seeking a declaration that Senator Smith was still the temporary president. By order, dated June 16, 2009, the court dismissed the suit, holding that it would be an “improvident intrusion” into the affairs of the Senate for the court to decide the issue.
Meanwhile, on June 15, 2009, Senator Monserrate announced that henceforward he would be voting with the 30 Senators who continued to recognize Senator Smith as the temporary president and majority leader. Following that date, each coalition of 31 Senators claimed that the temporary president whom it supported had the right to preside over Senate sessions. With the two coalitions vying for control, the Senate was unable to take any action on pending bills or even to conduct debate.
On July 8, 2009, Governor Paterson purported to appoint defendant, Richard Ravitch, as Lieutenant Governor of New York *352 State. Article iy § 6 of the NY Constitution provides that “[t]he lieutenant-governor shall be the president of the senate but shall have only a casting vote therein.” The term “casting vote” has historically been interpreted to mean a vote only on procedural matters (Ward, New York State Government [2d ed 2006]). It appears that a primary purpose of the Governor in appointing Ravitch was to break the procedural deadlock.
This action by Senators Skelos and Espada challenging the Governor’s appointment of Ravitch was commenced on July 9, 2009. On that date, plaintiffs moved by order to show cause for a preliminary injunction enjoining Ravitch from exercising any of the powers of the office of Lieutenant Governor. Pending the hearing of the application, Justice Ute Lally granted a temporary restraining order prohibiting Ravitch from exercising any of the Lieutenant Governor’s powers. The same date that the temporary restraining order was granted, it was vacated by Justice Leonard Austin of the Appellate Division, without prejudice to any and all claims and defenses of the respective parties.
Defendants move to dismiss the complaint on the ground that plaintiffs lack standing, their dispute with the Governor is nonjusticiable, and a quo warranto proceeding by the Attorney General is the exclusive remedy. Alternatively, defendants move to transfer the action to Albany County on the ground that Nassau County is not a proper county and for the convenience of witnesses. The court will begin by considering defendants’ motion to transfer.
CPLR 509 provides that the place of trial of an action shall be in the county designated by the plaintiff, unless the place of trial is changed to another county by order upon motion or by consent of the parties. The court, upon motion, may change the place of trial where the county designated by plaintiff is not a “proper county” or the convenience of material witnesses and the ends of justice will be promoted by the change (CPLR 510). CPLR 506 (b) provides that a proceeding against a body or officer shall be commenced in any county within the judicial district “where the respondent made the determination complained of . . .or where the material events otherwise took place, or where the principal office of the respondent is located.”
Defendants argue that while plaintiffs have styled their case as a declaratory judgment action, it is in essence a CPLR article 78 proceeding to annul the Governor’s determination appointing a Lieutenant Governor or to prohibit the Governor from *353 making such an appointment. Thus, defendants argue that Nassau County is not a proper county because the Governor made the determination to appoint Ravitch in Albany and the material events surrounding his decision took place there. The resolution of the venue issue requires the court to consider the nature of a declaratory judgment action as distinct from an article 78 proceeding.
CPLR 3001 provides that “[t]he Supreme Court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed.” “[D]eclaratory judgment does not entail coercive relief, but only provides a declaration of rights between parties that, it is hoped, will forestall later litigation” (Matter of Morgenthau v Erlbaum, 59 NY2d 143, 148 [Crim Ct, NY County 1983]). Declaratory judgment is “sui generis” in that it “escapes both the substantive objections and procedural limitations of special writs and extraordinary remedies” (id. at 147). However, declaratory judgment “is not an extraordinary remedy” (id.). “Unlike prohibition, its use is not limited to reviewing public acts of a judicial nature . . . [I]t has broad application, being invoked to declare rights derived from both private and public law and from both civil and criminal statutes” (id. at 147-148 [citations omitted]).
By contrast, an article 78 proceeding has much more limited scope. The only questions which may be raised in an article 78 proceeding are (1) whether a body or officer failed to perform a duty enjoined upon it by law, (2) whether the body or officer is proceeding without or in excess of its jurisdiction, (3) whether a determination was made in violation of lawful procedure, was affected by an error of law, was arbitrary and capricious, or an abuse of discretion, and (4) whether a determination made as a result of a hearing held, and at which evidence was taken, is on the entire record, supported by substantial evidence (CPLR 7803).
An article 78 proceeding is intended to provide relief previously obtained by writs of certiorari to review, mandamus, or prohibition (CPLR 7801). An article 78 proceeding will not lie in circumstances where relief by way of the common-law writs was not available. A proceeding in the nature of prohibition, the second branch of CPLR 7803, may be obtained only when a body or officer is acting in a judicial or quasi-judicial capacity in excess of its authorized jurisdiction (Morgenthau v Erlbaum at *354 147). Thus, neither legislative nor executive action may be challenged by a writ of prohibition or an article 78 proceeding (id.). Since “article 78 may not be used against executive officials, . . . plaintiffs [are] unable to use article 78 to challenge” action by the Governor (Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 815 [2003]).
While an article 78 proceeding is “as plenary as an action,” if is “brought on with the ease, speed, and economy of a mere motion” (Matter of Council of City of N.Y. v Bloomberg, 6 NY3d 380, 401 [2006, Rosenblatt, J., dissenting], quoting Siegel, NY Prac § 547, at 943 [4th ed]). “Since it is designed to facilitate a summary disposition of the issues presented, its procedures are in keeping with its summary nature” (id. [internal quotation marks omitted]). Indeed, the summary nature of an article 78 proceeding will often obviate the need for a summary judgment motion.
“By contrast, a declaratory judgment action brings with it all the apparatus of an action, proceeding to trial unless the court dismisses the case or grants a motion for summary judgment” (id.). Because of the summary nature of an article 78 proceeding, “[i]t is ill fit as a vehicle for constitutional analysis” (id. at 402). Indeed, as Judge Rosenblatt discusses in his dissent in Council of City of N.Y., summary constitutional adjudication in the form of an article 78 proceeding could run afoul of the separation of powers doctrine. On the other hand, “there is no statutory restriction on the kinds of claim that may be brought in the form of a declaratory judgment action, and it has traditionally been used to test a law’s constitutionality” (id.).
The concern to avoid summary constitutional adjudication is particularly acute where plaintiff claims that a statute is unconstitutional as applied because such claims, by definition, require a fact-specific inquiry. However, the separation of powers doctrine similarly militates against summary relief where plaintiff claims that legislative, or executive, action is unconstitutional on its face, based upon the plain meaning of the document. In the present case, plaintiffs assert that the Governor exceeded his power under NY Constitution, article iy § 6 by appointing a Lieutenant Governor. While plaintiffs challenge the constitutionality of executive rather than legislative action, the concern that constitutional adjudication not take place without a full record, and the full panoply of procedural rights, is equally compelling. The court concludes that plaintiffs have properly characterized their action as one for a declaratory judgment. Thus, CPLR 506 *355 (b), the special venue provision for an article 78 proceeding, does not apply.
Defendants further challenge the court’s authority to issue preliminary injunctive relief on the basis of CPLR 6311 (1). That subdivision provides in part, “A preliminary injunction to restrain a public officer . . . from performing a statutory duty may be granted only by the supreme court at a term in the department in which the officer ... is located or in which the duty is required to be performed.” Defendants argue that plaintiffs are requesting the court to restrain Mr. Ravitch from performing the Lieutenant Governor’s statutoiy duties and to restrain Mr. Paterson from performing the statutory duty of appointing a Lieutenant Governor. However, CPLR 6311 (1) is a venue provision, which does not by its terms apply to an action seeking a declaration that executive action is unconstitutional. Where a request for an injunction against an executive officer is incidental to declaratory relief, the venue restriction of CPLR 6311 (1) is not applicable (New York Cent. R.R. Co. v Lefkowitz, 12 NY2d 305 [1963]).
Defendant Paterson has indicated a willingness to abide by a declaration from the courts as to the Governor’s power to appoint a Lieutenant Governor. Thus, the court concludes that plaintiffs’ request for injunctive relief is incidental to their request for a declaratory judgment. If Mr. Paterson is not authorized by the Constitution to appoint a Lieutenant Governor, a fortiori he was not under a statutory duty to make the appointment. Since CPLR 6311 (1) has no application to the present action, defendants’ motion to change the place of trial to Albany on the ground that Nassau is not a proper county is denied.
Upon oral argument, defendants argued that the place of trial should be transferred to Albany based on the convenience of material witnesses. A party moving for a change of venue on this ground has the burden of demonstrating that the convenience of material witnesses would be better served by the change (Walsh v Mystic Tank Lines Corp., 51 AD3d 908 [2d Dept 2008]). The moving party must set forth (1) the names, addresses, and occupations of prospective witnesses, (2) the facts to which the witnesses will testify, (3) a statement that the witnesses are willing to testify, and a statement that the witnesses would be greatly inconvenienced if the venue of the action was not changed (id.).
Since this case involves the constitutionality of executive action, affecting the Senate, the court will presume that the mate *356 rial witnesses are members of the executive or legislative branches of state government and are willing to testify. However, defendants have failed to make any showing as to the identity of the witnesses or the subject matter of their testimony. Moreover, there is apparently no inconvenience for members of the executive or legislative branch to travel from Albany to Nassau. Defendants’ motion to transfer the place of trial to Albany based upon the convenience of material witnesses is denied.
The subject matter jurisdiction of the court extends only to justiciable controversies (Rubinstein v Salomon, 46 AD3d 536 [2d Dept 2007]).
“The difficulty in determining what is ‘justiciable’ arises in part from the nebulous quality of that concept. It is a far-reaching term that incorporates, among other things, political questions and mootness. Even within a particular category of justiciability, as with political questions, the line separating the justiciable from the nonjusticiable has been subtle, and with the passage of time, it might be said, has even moved.
“The paramount concern is that the judiciary not undertake tasks that the other branches are better suited to perform” (Klostermann v Cuomo, 61 NY2d 525, 535 [1984]).
A controversy is not justiciable if its resolution would require the court to “intrude upon the policy-making and discretionary decisions that are reserved to the legislative and executive branches” (Campaign for Fiscal Equity, Inc. v State of New York, 8 NY3d 14 [2006]). A court may determine whether the State Constitution or the Legislature has empowered the Governor to act. However, because of the principle of separation of powers, a court cannot review the manner in which the Governor chooses to discharge that authority (Matter of Johnson v Pataki, 91 NY2d 214 [1997]). Similarly, the principle of separation of powers requires a court to refrain from entertaining an internal “administrative dispute” within the Legislature (Matter of Anderson v Krupsak, 40 NY2d 397, 402 [1976]). However, a court must decide questions of law which are presented to it, despite their “political overtones” and the “political context” in which such questions arise (id. at 403-404).
The present dispute concerning the Governor’s power to appoint a Lieutenant Governor clearly arises from a political context. It appears that the Governor appointed Mr. Ravitch in *357 order to “jump-start” the legislative process. A ruling by the court as to whether Ravitch was properly appointed could affect the governorship’s succession. Nevertheless, plaintiffs do not challenge Mr. Ravitch’s qualifications to serve as Lieutenant Governor, but rather whether the Constitution or legislative enactment gives the Governor power to make an appointment. Since resolution of this issue is not a task assigned to another branch of government, the present controversy is not a political question.
A court’s jurisdiction extends only to live controversies (Saratoga County Chamber of Commerce v Pataki, supra). A court will not ordinarily entertain a matter where the specific controversy between the parties is no longer extant (Cellular Tel. Co. v Village of Tarrytown, 209 AD2d 57 [2d Dept 1995]). However, a controversy is not moot where a judicial determination carries “immediate, practical consequences for the parties” (Saratoga County Chamber of Commerce v Pataki at 812). Contrary to defendants’ argument, the case is not moot simply because Mr. Ravitch has taken the oath of office. On oral argument, counsel for defendants conceded that Ravitch is presently performing the duties of Lieutenant Governor. Those duties include serving as president of the Senate and membership on various committees. Were this court to rule that the Governor was without power to appoint a Lieutenant Governor, Ravitch would no longer perform these duties or stand first in the governorship’s line of succession. Because of these immediate, practical consequences, the case is not moot. Defendants’ motion to dismiss the complaint for mootness or lack of a justiciable controversy is denied.
Executive Law § 63-b (1) provides that the “Attorney General may maintain an action, upon his own [initiative] or upon the complaint of a private person, against a person who usurps, intrudes into, or unlawfully holds or exercises within the state a franchise or a public office.” This statute is a codification of the common-law quo warranto action by the Attorney General to challenge the results of an election (Matter of Delgado v Sunderland, 97 NY2d 420 [2002]). Such challenges are ordinarily based on voting machine malfunctions or occasionally voter fraud. In quo warranto, the Attorney General performs both an investigative and a screening function (id.). The exclusivity of quo warranto allows the Attorney General to investigate election challenges promptly and also “avoids the risk of leaving the contested office vacant for possibly a *358 protracted period while the election result is being litigated through the courts” (id. at 424). The present action challenging the Governor’s power to appoint a Lieutenant Governor does not involve a contested election. Accordingly, defendants’ motion to dismiss the complaint on the ground that a quo warranto action by the Attorney General is the exclusive remedy is denied.
“A plaintiff has standing to maintain an action upon alleging an injury in fact that falls within his or her zone of interest” (Silver v Pataki, 96 NY2d 532, 539 [2001]). “The existence of an injury in fact — an actual legal stake in the matter being adjudicated — ensures that the party seeking review has some concrete interest in prosecuting the action which casts the dispute in a form traditionally capable of judicial resolution” (id. at 539 [internal quotation marks omitted]). An individual member of the State Legislature does not have standing where his purported injury-in-fact is based upon a “lost political battle” (id.). To allow standing in that circumstance might allow a legislator “to obtain a result in a courtroom which he failed to gain in the halls of the Legislature” (id. at 540). Under the principle of separation of powers, denial of standing to challenge the validity of an appropriation bill, or to seek a recount on a floor vote, is necessary to protect the integrity of the Legislature.
However, where a legislator alleges that executive action has resulted in the “nullification of his vote,” he has alleged a sufficient injury-in-fact to confer standing (id. at 539). Thus, in Silver v Pataki, the Court of Appeals allowed an individual member of the Legislature standing to challenge line item vetoes on nonappropriation bills by the Governor (id. at 535). Since plaintiff had “won the legislative battle,” he had standing to challenge the nullification of his vote in the form of a veto by the Governor (id. at 540).
Similarly, legislator standing is allowed where the injury-in-fact alleged is the “usurpation of power” belonging to the legislative body (id.). In Silver, the Court of Appeals cited Dodak v State Admin. Bd. (441 Mich 547, 495 NW2d 539 [1993]) as an example of legislator standing based upon usurpation of power. In Dodak, the Supreme Court of Michigan granted individual legislators standing to challenge a state administrative board’s transfer of appropriated funds on the ground that the board’s authority to transfer the funds had been impliedly repealed by the Legislature. Since an implied repeal would have returned *359 the exclusive power to transfer appropriated funds to the Legislature, the board’s action was arguably an usurpation of legislative power. Citing this case with approval, our Court of Appeals held, “[i]n limited circumstances, legislators do have capacity and standing to sue when conduct unlawfully interferes with or usurps their duties as legislators” (Silver v Pataki at 542).
Article III, § 9 of the NY Constitution provides that “the senate shall choose a temporary president.” Since article III, § 6 provides that the Lieutenant Governor shall be the president of the Senate, it appears that the temporary president presides in the absence of the Lieutenant Governor. Prior to the appointment of Mr. Ravitch as Lieutenant Governor, a temporary president elected by plaintiffs and the other members of the Senate would not only preside over the Senate but also stand next in the succession to the governorship. Plaintiffs allege that the Governor has interfered with their power to elect a temporary president by appointing a Lieutenant Governor to act in place of a duly elected member of the Senate. The court concludes that plaintiffs have alleged a usurpation of Senate power that gives rise to a sufficient injury-in-fact falling within their zone of interest. Defendants’ motion to dismiss the complaint for lack of standing is denied.
In order to be entitled to a preliminary injunction, plaintiffs must show a likelihood of success on the merits, danger of irreparable injury in the absence of an injunction, and a balance of the equities in their favor (Aetna Ins. Co. v Capasso, 75 NY2d 860 [1990]). As noted above, the failure of NY Constitution, article iy § 6 to provide for succession to the lieutenant governorship when the temporary president is acting as Governor strongly suggests that the office is to remain vacant until such time as a Governor is elected. Since a Lieutenant Governor has never been appointed, this interpretation is consistent with historical practice.
However, defendants note that article XIII, § 3 authorizes the Legislature to determine how vacancies in office should be filled. That section provides,
“The legislature shall provide for filling vacancies in office, and in case of elective officers, no person appointed to fill a vacancy shall hold his or her office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the
*360 vacancy . . .
Defendants assert that the Legislature provided for filling vacancies in the office of Lieutenant Governor in section 43 of the Public Officers Law. That section provides, “[i]f a vacancy shall occur, otherwise than by expiration of term, with no provision of law for filling the same, if the office be elective, the governor shall appoint a person to execute the duties thereof until the vacancy shall be filled by an election.” Defendants argue that section 43 applies to the office of Lieutenant Governor because the office is “elective” and there is no provision of law for filling the office.
However, the simple answer to defendants’ argument is that NY Constitution, article XIII, § 3 cannot apply to the office of Lieutenant Governor. By providing that a person appointed to fill a vacancy in an elective office cannot serve longer than the commencement of the next “political year,” article XIII, § 3 in effect requires that the appointee must run at the next election. However, article IV, § 6 expressly provides that there shall be no separate election for Lieutenant Governor. Defendants rely upon Matter of Ward v Curran (266 App Div 524 [3d Dept 1943]) to support their position that the Governor may appoint a Lieutenant Governor. However, in Ward, the court affirmed the granting of a writ of mandamus directing the Secretary of State to conduct an election for the office of Lieutenant Governor at the next general election. Following Ward, article IY¡ § 6 was amended in 1945 to require that the Governor and Lieutenant Governor be elected at the same time {see Historical Notes, McKinney’s Cons Laws of NY, Book 2, NY Const, art I\( § 6). Thus, Ward may be considered legislatively overruled by the constitutional amendment.
Since article XIII, § 3 does not apply to the office of Lieutenant Governor, it does not empower the Legislature to provide for the filling of a vacancy in that office. Thus, section 43 of the Public Officers Law would not be constitutional if it applied to the office of Lieutenant Governor. Thus, the court must hold that the office of Lieutenant Governor is not an “elective office” within the meaning of section 43. Since the Lieutenant Governor is elected only at the same time as the Governor, there is a rational basis for this interpretation of the statute. The court concludes that plaintiffs have established a likelihood of success on the merits for their claim that neither the Constitution nor legislative enactment authorized the Governor to make the appointment.
*361 Plaintiffs argue that they are suffering irreparable harm because “an unconstitutional and illegal officer [is] presiding over the Senate of which they are members.” In an effort to minimize the harm caused by an illegal president of the Senate, defendants respond that the “appointment is not permanent and can plainly be remedied” at a subsequent time.
Because the timing of political speech is so important, it is irreparable harm to be deprived of freedom of political speech for even a minimal period of time (Elrod v Burns, 427 US 347 [1976]). In the heat of political debate, the timing of a legislator’s speech is even more critical than that of a private citizen. For Mr. Ravitch, as president of the Senate, to refuse to yield plaintiffs the floor, or otherwise deprive them of the right to speak through application of a Senate rule, will similarly give rise to irreparable harm.
Moreover, were the Governor to die, resign, or be removed from office, Mr. Ravitch, if allowed to remain in office, is next in the line of succession. For an illegally appointed Lieutenant Governor to act as Governor of the State would clearly constitute irreparable harm.
The court determines that a balance of the equities is decidedly in plaintiffs’ favor. If a preliminary injunction is issued, the duties of Lieutenant Governor will be performed by Senator Smith, the temporary president. However, if a preliminary injunction is denied, the workings of an entire branch of government will be affected. A preliminary injunction is an extraordinary remedy, which is to be used sparingly (Fischer v Deitsch, 168 AD2d 599 [2d Dept 1990]). As the principle of separation of powers militates against summary constitutional adjudication, it cautions against pendente lite relief restraining the executive branch. Nevertheless, the court is convinced that this is the rare case in which a preliminary injunction enjoining an act of the Governor of the State is appropriate. It is therefore ordered, that the motion by plaintiffs for a preliminary injunction is granted and, pending a final judgment herein, defendant, Richard Ravitch, is preliminarily enjoined from exercising any of the powers of the office of Lieutenant Governor of the State of New York; and it is further ordered, that the motion by defendants to change venue to Albany County is denied; and it is further ordered, that the motion by defendants to dismiss the complaint is denied.
All further requested relief not specifically granted is denied.

. The New York Redbook at 103 (2007-2008 ed).

. As will be discussed infra, the Lieutenant Governor serves as president of the Senate. The duties of the Lieutenant Governor also include being a member of the impeachment court, the Committee on Open Government, the State Defense Council, and the College Board of Trustees (see complaint 1112).